**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NORTH HAVEN LODGING PARTNERS LLC, a South Dakota limited liability company, and WALLINGFORD LODGING PARTNERS LLC, a South Dakota limited liability company, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:23-cv-16264 |
| | ) | |
| vs. | ) | |
| | ) | |
| MCMANN COMMERCIAL LENDING LLC n/k/a MCMANN PROFESSIONAL SERVICES LLC and/or MCMANN CAPITAL, an Illinois limited liability company, and GENIE INVESTMENTS NV, a Nevada corporation, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

Plaintiffs, NORTH HAVEN LODGING PARTNERS LLC, a South Dakota limited liability company ("North Haven"), and WALLINGFORD LODGING PARTNERS LLC, a South Dakota limited liability company ("Wallingford", together with North Haven, the "Plaintiffs"), for their complaint against Defendants, MCMANN COMMERCIAL LENDING LLC n/k/a MCMANN PROFESSIONAL SERVICES LLC and/or MCMANN CAPITAL, an Illinois limited liability company ("McMann"), and GENIE INVESTMENTS NV, a Nevada corporation ("Genie"),  together with McMann, the "Defendants"), states as follows:

**NATURE OF ACTION**

1.      Plaintiffs bring this action to recover $3,600,000 in funds that the Defendants have wrongfully withheld and willfully refused to return to the Plaintiffs despite both Defendants acknowledging orally and in writing that Plaintiffs are entitled to a return of the funds.  At issue

1

are two $18,000,000 lines of credits made by McMann to the Plaintiffs. As part of the lines of credit, the Plaintiffs were obligated to, and did, prepay $1,800,000 in interest under each line of credit. At the direction of McMann, the Plaintiffs wired the prepaid interest directly to Genie to be held in trust and accounted for pursuant to the loan documents as prepaid interest to be applied against each of the lines of credit. No other use of the deposit funds was authorized by Plaintiffs. Pursuant to the loan documents, McMann and/or Genie was obligated to fund each of the lines of credit, yet McMann and/or Genie failed to do so. Pursuant to the loan documents, McMann and/or Genie was obligated to refund the prepaid interest payments if the lines of credit were not funded. The Plaintiffs have demanded return of the prepaid interest. Both Defendants have acknowledged orally and in writing that Genie received the funds and that the Plaintiffs are entitled to a return of the funds, yet each of the Defendants have failed to return any of the $3,600,000 to the Plaintiffs in an effort to defraud Plaintiffs.

## **THE PARTIES**

2.      North Haven is a South Dakota limited liability company with its principal place of business located at 2517 West Brentridge Circle, Sioux Falls, South Dakota. The members of North Haven are PB Corporation TN, a Georgia corporation with its principal place of business in Athens, Georgia, Hari Har Management, Inc. a South Dakota corporation with its principal place of business in Sioux Falls, South Dakota, and two individuals, who are residents of and domiciled in Connecticut.

3.      Wallingford is a South Dakota limited liability company with its principal place of business located at 2517 West Brentridge Circle, Sioux Falls, South Dakota. The sole member of Wallingford is an individual who is a resident of and domiciled in South Dakota.

4.      McMann is an Illinois limited liability company with its principal place of business located at 205 N. Michigan Ave., Ste. 810, Chicago Illinois 60601 and its registered agent located

at 500 Skokie Blvd., Ste. 600, Northbrook, IL 60062.  According to the Illinois Secretary of State records McMann changed its name to McMann Professional Services LLC and/or McMann Capital on or about August 4, 2023.  Upon information and belief, none of the members of McMann are residents of, or domiciled in, Georgia, South Dakota, or Connecticut.

5.      Genie is a Nevada corporation with its principal address in Reno, Nevada.

## JURISDICTION AND VENUE

6.      This Court has diversity subject matter jurisdiction over this lawsuit under 28 U.S.C. §§ 1332(a)(1) as this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      Plaintiffs are South Dakota limited liability companies whose members are citizens of Georgia, South Dakota, and/or Connecticut.

8.      Defendant McMann is an Illinois limited liability company and upon information and belief, and based upon a reasonable pre-suit investigation, none of the members of McMann are citizens of Georgia, South Dakota, or Connecticut.

9.      Defendant Genie is a Nevada corporation with its principal place of business in Reno, Nevada.

10.     This Court has personal jurisdiction over each of the parties to this matter.  The Plaintiffs have conducted business with McMann, an Illinois limited liability company.  The Defendants have conducted and presently conduct business in Illinois.  McMann is an Illinois limited liability with its principal place of business in this state and in this district.  Genie has conducted and presently conducts business in this state and in this district by conducting business for and on behalf of McMann both as related to the two lines of credit at issue and, upon information and belief, as to other loans made by McMann to other McMann borrowers.  One of

3

Genie's officers, David Hughes, who has directly interacted with Plaintiffs related to the lines of credit at issue, resides in the state of Illinois and has conducted business within this state as related to the two lines of credit, and upon information and belief related to other transactions with McMann. Genie is subject to personal jurisdiction in accordance with Illinois' long-arm statute, which provides, in relevant part:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: (1) The transaction of any business within this State . . . .

735 ILCS 5/2-209(a).

11.     This Court is the proper venue for this lawsuit under 28 U.S.C. § 1391(a) because the events giving rise to Plaintiff's claim against the Defendants occurred in this judicial district.

## FACTS

### Loan to North Haven

12.     On or about April 10, 2023, McMann, through Walter Trock, Michael Lanza, and others, agreed to make a loan to North Haven in the form of a $18,000,000 line of credit, with a maximum amount of $18,600,000 ("North Haven Loan").

13.     The purpose of the line of credit was for the construction of a 105-room limited-service hotel.

14.     The North Haven Loan is governed by that certain Business Expansion Line of Credit Agreement ("North Haven BELOC") dated April 10, 2023 made by and between North Haven and McMann. Walter Trock executed the North Haven BELOC for McMann.  A copy of the North Haven BELOC is attached as **Exhibit 1**.

4

15.     The North Haven Loan is evidenced by that certain Promissory Note dated April 10, 2023 in the principal amount of $18,600,000 ("North Haven Note") made by North Haven in favor of McMann.  The North Haven Note is attached to the North Haven BELOC as Exhibit A. *See* Ex. 1 North Haven BELOC, Ex. A.

16.     The North Haven Loan is secured by that certain Security Agreement dated April 10, 2023 made by North Haven in favor of McMann ("North Haven Security Agreement").  The North Haven Security Agreement is attached to the North Haven BELOC as Exhibit E. *See* Ex. 1 North Haven BELOC, Ex. E.

17.     The North Haven BELOC required North Haven to pay $1,800,000 to McMann as prepaid interest for the North Haven Loan ("North Haven ICA Payment").

18.     The North Haven BELOC required McMann to establish on McMann's books and records an interest credit account for the North Haven ICA Payment ("North Haven ICA") so that interest payments on the North Haven Loan would first be satisfied by using the North Haven ICA Payment.  *See* Ex. 1, North Haven BELOC, Recitals C, D; §3.5.

19.     The North Haven BELOC required McMann to fund the advances under the North Haven Loan pursuant to the parties' agreed upon schedule, with the first funding advance to occur within seventy-five (75) days of the ICA Payment. *See* Ex. 1, North Haven BELOC, §7.1 and Ex. B, Tranche Schedule.

20.     The Plaintiffs reasonably relied on McMann's, Trock's, and Lanza's promises, agreement, and statements to fund the North Haven Loan in accordance with the parties' agreements.

21.     In reliance on McMann's, Trock's, and Lanza's assurances, the Plaintiffs paid the North Haven ICA Payment.

22.     On April 10, 2023, McMann directed North Haven to wire the North Haven ICA Payment to a bank account at Chase Bank, Account Number xxxxx8502, titled in the name "Genie Investments NV."

23.     On April 10, 2023, North Haven wired the North Haven ICA Payment as instructed by McMann to the Chase Bank Account, Account Number xxxxx8502.

24.     Both McMann and Genie have confirmed in writing that Genie received the North Haven ICA Payment.

**Loan to Wallingford**

25.     On or about April 10, 2023, McMann, through Walter Trock, Michael Lanza, and others,  agreed to make a loan to Wallingford in the form of a $18,000,000 line of credit, with a maximum amount of $18,600,000 ("Wallingford Loan").

26.     The purpose of the line of credit was for the construction of a 105-room limited-service hotel.

27.     The Wallingford Loan is governed by that certain Business Expansion Line of Credit Agreement ("Wallingford BELOC" together with the North Haven BELOC, the "BELOCs") dated April 10, 2023 made by and between Wallingford and McMann. Walter Trock executed the Wallingford BELOC for McMann. A copy of the Wallingford BELOC is attached as **Exhibit 2**.

28.     The Wallingford Loan is evidenced by that certain Promissory Note dated April 10, 2023 in the principal amount of $18,600,000 ("Wallingford Note") made by Wallingford in favor of McMann.  The Wallingford Note is attached to the Wallingford BELOC as Exhibit A. *See* Ex. 2, Wallingford BELOC, Ex. A.

29.     The Wallingford Loan is secured by that certain Security Agreement dated April 10, 2023 made by Wallingford in favor of McMann ("Wallingford Security Agreement").  The

6

Wallingford Security Agreement is attached to the Wallingford BELOC as Exhibit E. *See* Ex. 2, Wallingford BELOC, Ex. E.

30.     The Wallingford BELOC required North Haven to pay $1,800,000 to McMann as prepaid interest for the Wallingford Loan ("Wallingford ICA Payment" together with the North Haven ICA Payment, the "ICA Payments").

31.     The Wallingford BELOC required McMann to establish on McMann's books and records an interest credit account for the Wallingford ICA Payment ("Wallingford ICA") so that interest payments on the Wallingford Loan would first be satisfied by using the Wallingford ICA Payment.  *See* Ex. 2, Wallingford BELOC, Recitals C, D; §3.5.

32.     The Wallingford BELOC required McMann to fund the advances under the Wallingford Loan pursuant to the parties' agreed upon schedule, with the first funding advance to occur within seventy-five (75) days of the ICA Payment. *See* Ex. 2, Wallingford BELOC, §7.1 and Ex. B, Tranche Schedule.

33.     The Plaintiffs reasonably relied on McMann's, Trock's, and Lanza's promises, agreement, and statements to fund the Wallingford Loan in accordance with the parties' agreements.

34.     In reliance on McMann's, Trock's, and Lanza's assurances, the Plaintiffs paid the Wallingford ICA Payment.

35.     On April 10, 2023, McMann directed Wallingford to wire the Wallingford ICA Payment to a bank account at Chase Bank, Account Number xxxxx8502, titled in the name "Genie Investments NV."

36.     On April 10, 2023, Wallingford wired the Wallingford ICA Payment as instructed by McMann to the Chase Bank Account, Account Number xxxxx8502.

4889-8151-4893

37.     Both McMann and Genie have confirmed in writing that Genie received the Wallingford ICA Payment.

**McMann's Breach of the North Haven Loan and Wallingford Loan and Plaintiffs' Demand for Refund**

38.      McMann failed to fund both the North Haven Loan and Wallingford Loan as required by the BELOCs.

39.     The North Haven BELOC provides North Haven the right to terminate the agreement and demand refund of the North Haven ICA Payment in the event that McMann fails to timely fund the North Haven Loan.  Specifically, Section 13.7(a) of the North Haven BELOC provides:

> Upon the occurrence of such default, Borrower shall deliver a written notice in the form of a notarized termination letter, a copy of which is attached hereto as Exhibit F ("the Termination Letter"), to Lender by certified mail. Upon receipt of such notice, **Lender shall have forty (40) international business-banking days from the date of receipt ("Refund Period") within which to return the ICA Payment to the Borrower**….

Exhibit 1, §13.7(a) (emphasis added).

40.     The Wallingford BELOC provides Wallingford the right to terminate the agreement and demand refund of the Wallingford ICA Payment in the event that McMann fails to timely fund the Wallingford Loan.  Specifically, Section 13.7(a) of the Wallingford BELOC provides:

> Upon the occurrence of such default, Borrower shall deliver a written notice in the form of a notarized termination letter, a copy of which is attached hereto as Exhibit F ("the Termination Letter"), to Lender by certified mail. Upon receipt of such notice, **Lender shall have forty (40) international business-banking days from the date of receipt ("Refund Period") within which to return the ICA Payment to the Borrower**….

8

Exhibit 2, §13.7(a) (emphasis added).

41.     On August 17, 2023, North Haven and Wallingford each tendered a Termination Letter for each of the North Haven Loan and Wallingford Loan pursuant to the BELOCs and demanded a refund of each of the ICA Payments (the "Termination Notices").  A copy of each of the Termination Letters is attached as **Exhibit 3.** The Termination Notices were provided to both McMann and Genie via a communication platform utilized by McMann and Genie called Zoomeral.

42.     Pursuant to the BELOCs, McMann was obligated to refund the ICA Payments on or before October 17, 2023.

43.     Upon information and belief, McMann did not have the loan funds to fund either the North Haven Loan or Wallingford Loan when it entered into the BELOCs.

44.     To date, McMann has failed to refund the North Haven ICA Payment and the Wallingford ICA Payment.

**McMann Provides False Oral and Written Information to Plaintiffs**

45.     Instead of refunding the ICA Payments as required by the loan documents, McMann has engaged in a series of false oral and written statements.

46.     On or about October 16, 2023, Walter Trock, Senior Managing Partner of McMann sent a series of text messages to Preet Patel, a representative of the Plaintiffs, in which Mr. Trock assured the Plaintiffs that McMann would obtain a refund from Genie for the Plaintiffs despite McMann's own obligation to provide a refund to Plaintiffs.

47.     Mr. Trock also falsely stated to the Plaintiffs that this is the first time Genie has refused to refund money to a McMann borrower.  As the Plaintiffs unfortunately learned later,

McMann and Genie have engaged in similar misconduct and apparent fraud for a host of other borrowers.

48.     The Plaintiffs reasonably relied on McMann's and Mr. Trock's representations and actions and believed that McMann would obtain a refund of the ICA Payments.

49.     On October 24, 2023, counsel for McMann sent a demand letter to Genie demanding that Genie immediately refund the ICA Payments to Plaintiffs.  A copy of the October 24, 2023 letter is attached as **Exhibit 4.**

50.     The October 24, 2023 letter also makes a series of admissions that confirm Plaintiffs' entitlement to the return of the ICA Payments and confirm McMann's and Genie's liability to the Plaintiffs.

51.     Specifically, McMann admits:

a.      Genie received payment of each of the ICA Payments on May 3, 2023;

b.      Genie was obligated to hold the ICA Payments in trust for the benefit of the Plaintiffs;

c.      The Plaintiffs properly terminated the BELOCs;

d.      The Plaintiffs properly exercised their rights under Section 13.7 of the BELOCs and demanded refund of the ICA Payments;

e.      The Plaintiffs have complied with every term of the BELOCs;

f.      Genie properly received notice of the Plaintiffs' termination of the BELOCs and demand of refund of the ICA Payments;

g.      Genie admitted that the Plaintiffs' are entitled to a refund of the ICA Payments;

h.      Genie promised to refund the refund of the ICA Payments on or before October 13, 2023; and

i.      The Plaintiffs are entitled to the immediate return of the ICA Payments and there is no legal or good faith basis that these funds should not be returned.

4889-8151-4893

52.     McMann has falsely stated orally and in writing that it will refund ICA Payments.

53.     Despite McMann's written and oral representations, statements, assurances, and promises, McMann continues to refuse to refund the ICA Payments.

54.     The Plaintiffs reasonably relied on McMann's continued assurances and promises that it will refund the ICA Payments and the Plaintiffs believed that McMann would obtain and issue a refund of the ICA Payments.

**Genie and David Hughes Provides False Oral and Written Information to Plaintiffs**

55.     Genie has admitted and acknowledged orally and in writing that it received the ICA Payments.

56.     On August 18, 2023, the Plaintiffs provided Genie notice that the Plaintiffs exercised their rights under the BELOCs and terminated the agreements.

57.     On August 18, 2023, the Plaintiffs demanded a refund of the ICA Payments.

58.     Instead of refunding the ICA Payments as required, Genie, through its Director, David Hughes has engaged in a series of oral and written false statements to induce the Plaintiffs into believing that Genie will refund the ICA Payments.

59.     On September 14, 2023, Genie represented, in writing via Zoomeral, that it would refund the ICA Payments on October 13, 2023.  *See* Exhibit E to Complaint Exhibit 4.

60.     Additionally, on October 11, 2023 David Hughes confirmed to Plaintiffs there was "nothing" to be done when asked by Preet Patel (representative of Plaintiffs) "nothing on our end left to do re: refund this week correct?"

61.     Genie and David Hughes also orally confirmed to the Plaintiffs that the Plaintiffs were entitled to the refund of the ICA Payments during multiple telephone discussions. The most recent confirmation of entitlement to a refund was provided during a October 17, 2023 telephone

4889-8151-4893

discussion with David Hughes wherein Hughes assured Plaintiffs that Genie had never failed to make an ICA refund in the past. As the Plaintiffs unfortunately learned later, McMann and Genie have engaged in similar misconduct and apparent fraud for a host of other borrowers.

62.     Genie knew these representations were materially false when made because Genie did not have the funds to refund the ICA Payments. As the Plaintiffs unfortunately learned later, McMann and Genie have engaged in similar misconduct and apparent fraud for a host of other borrowers.

63.     The Plaintiffs reasonably relied on Genie's representations that it would refund the ICA Payments on October 13, 2023.

64.     Instead of refunding the payments on October 13, 2023, Genie, through its counsel Adam Walker of Walker Law Office, LLC sent a letter to the Plaintiffs for each of the loans alleging it is unable to refund the ICA Payments at this time because of "the ongoing failure of its capital provider to comply with its contractual obligations to provide funds to Genie." A copy of the October 13, 2023 letters are attached as **Group Exhibit 5**.

65.     Genie's October 13, 2023 letter is an admission that it unlawfully transferred the ICA Payments and did not hold those funds in trust for the benefit of the Plaintiffs are required by the BELOC and obligations delegated to Genie by McMann related to the ICA Payments.

66.     Specifically, Genie stated that it is working to "compel the capital provider to deliver the funds it owes, so that Genie can, in turn, provide refunds to its borrowers." Ex. 5.

67.     In other words, Genie admitted that it no longer has the ICA Payments in its possession and control. Instead, Genie admits that it used the ICA Payments for an unauthorized purpose and was apparently relying on another third-party to pay funds to Genie and Genie would

4889-8151-4893

then in turn pay those funds to the Plaintiffs for refund of the ICA Payments. Plaintiffs never authorized any other use of their funds other than to be held in trust pursuant to the BELOCs.

### McMann Misappropriates the ICA Payments and Violates its Fiduciary Duties to the Plaintiffs

68.     The BELOCs require McMann to hold the ICA Payments in trust to be used to repay the Loans pursuant to each of the BELOC agreements.

69.     Specifically, the BELOCs required McMann to establish an Interest Reserve Account and to account for the ICA Payments on McMann's books and records and apply a credit equal to the amount of each payment "purposes of satisfying interest payments under the LOC and upon the terms and conditions set forth herein" Exs. 1 and 2, Recitals C, D.

70.     Likewise, Section 3.5 of the BELOCs required McMann to pay interest on the Loans directly from the ICA Payments. Exs. 1 and 2, §3.5.

71.     McMann agreed to repay the ICA Payments within 40 business days of its default under the Loans. Exs. 1 and 2, §13.7(b).

72.     McMann owed a fiduciary duty to the Plaintiffs to hold the ICA Payments in trust and safeguard those funds so the funds could be applied pursuant to the BELOCs.

73.     McMann owed a fiduciary duty to the Plaintiffs to act in accordance with the BELOCs, including to hold the funds in trust, apply the funds pursuant to the parties' agreement, and return the funds as required by the BELOCs.

74.     McMann breached its fiduciary duties and misappropriated the ICA Payments by, among other breaches:

        a.      Failing to hold the ICA Payments in trust and safeguard those funds;

        b.      Failing to establish the Interest Reserve Accounts;

        c.      Failing to account for the ICA Payments on McMann's books and records;

4889-8151-4893

d.        Failing to comply with the terms of the BELOCs; and

e.        Failing to return the ICA Payments as required by the BELOCs.

75.     McMann also violated its fiduciary duties to the Plaintiffs and the terms of the BELOCs by sending the ICA Payments to Genie when it knew Genie was not a trustworthy fiduciary of those funds, thus diverting and converting those funds.

76.     McMann was aware, prior to the transfer of the ICA Payments, that Genie was not a trustworthy fiduciary because, upon information and belief, Genie and McMann previously refused and were unable to fund other loans and previously refused and were unable to refund other similar prepaid interest payments for other McMann borrowers.

77.     The Plaintiffs reasonably relied on McMann and reasonably believed that McMann would honor its fiduciary duties to the Plaintiffs.

78.     As a result of the Plaintiffs' reliance and beliefs, the Plaintiffs have suffered damages.

**Genie Misappropriates the ICA Payments and Violates its Fiduciary Duties to the Plaintiffs**

79.     Upon information and belief, Genie drafted and provided to McMann the loan documents for each of the North Haven and Wallingford Loans and directed McMann on how to use the loan documents. McMann and Genie were effectively partners in issuing the loans to Plaintiffs.

80.     Upon information and belief, Genie was aware of the terms of each of the Loans.

81.     Upon information and belief, Genie was aware that the ICA Payments were to be held in trust and safeguarded so the funds could be applied pursuant to the BELOCs and Genie directed that wiring instructions state that the ICA Payments were to be wired directly to Genie.

4889-8151-4893

82.     Upon information and belief, Genie agreed to hold the ICA Payments in trust and safeguard those funds for the benefit of Plaintiffs.

83.     Genie received each of the ICA Payments into Genie's Chase Bank Account Number xxxxx8502 on or about May 3, 2023.

84.     Genie owed a fiduciary duty to the Plaintiffs to hold the ICA Payments in trust and safeguard those funds so the funds could be applied pursuant to the BELOCs.

85.     Upon information and belief, Genie transferred the ICA Payments from its Chase Bank Account Number xxxxx8502 to another location, thus diverting and converting those funds.

86.     Genie did not hold the ICA Payments in trust so the funds could be applied pursuant to the BELOCs.

87.     Genie admits that it is obligated to return the ICA Payments to the Plaintiffs.

88.     Plaintiffs (and McMann) has demanded that Genie return the ICA Payments to the Plaintiffs.

89.     Genie promised to refund the ICA Payments by October 13, 2023.

90.     Genie breached its fiduciary duties and misappropriated the ICA Payments by, among other breaches:

    a.      Failing to hold the ICA Payments in trust and safeguard those funds; and

    b.      Failing to return the ICA Payments as it agreed to do and as directed by McMann.

91.     The Plaintiffs reasonably relied on Genie and reasonably believed that Genie would honor its fiduciary duties to the Plaintiffs.

92.     As a result of the Plaintiffs' reliance and beliefs, the Plaintiffs have suffered damages.

## COUNT I
## BREACH OF CONTRACT
### (against McMann)

93.     The Plaintiffs restate and incorporate the allegations of Paragraphs 1-54, 68-78 of the Complaint as if fully set forth herein.

94.     The BELOCs and Loan Documents are legally valid, binding and enforceable agreements.

95.     Pursuant to the BELOCs, McMann agreed to provide the Loans to the Plaintiffs in exchange for, among other consideration, payment of the ICA Payments.

96.     The Plaintiffs paid the ICA Payments pursuant to the BELOCs.

97.     Pursuant to the BELOCs, McMann agreed to refund the ICA Payments within 40 business days of receipt of the Termination Notices.

98.     McMann admits that the BELOCs are valid and binding agreements.

99.     McMann defaulted under the terms of the BELOCs.

100.    The Plaintiffs properly exercised their rights to terminate the BELOCs, properly provided the Termination Notices, and are entitled to the immediate refund of the ICA Payments.

101.    The Plaintiffs have fully performed all obligations under the BELOCs.

102.    McMann has no legally recognized justification or excuse for breaching the BELOCs and Loan Documents.

103.    McMann has no legally recognized justification or excuse for refusing to refund the ICA Payments.

104.    The Plaintiffs are entitled to a return of the ICA Payments.

105.    McMann has breached the BELOCs and Loan Documents by, among other breaches:

4889-8151-4893

a.    Failing to fund each of the Loans;

b.    Failing to hold the ICA Payments in trust and safeguard those funds;

c.    Failing to establish the Interest Reserve Accounts;

d.    Failing to account for the ICA Payments on McMann's books and records;

e.    Failing to comply with the terms of the BELOCs; and

f.    Failing to refund the ICA Payments within 40 business days from receipt of the Termination Notices.

106.    The Plaintiffs have been damaged as a result of each and every breach of the BELOCs and Loan Documents in an amount not less than $3,600,000.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against McMann:

A.    Awarding the Plaintiffs $3,600,000 for McMann's breach of the BELOCs and Loan Documents;

B.    Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C.    Awarding the Plaintiffs their costs and attorney's fees, as provided by the BELOCs and applicable law; and

D.    Grant the Plaintiffs such other relief as this Court deems just.

**COUNT II**
**CONVERSION**
**(against McMann)**

107.    The Plaintiffs restate and incorporate the allegations of Paragraphs 1-54, 68-78 of the Complaint as if fully set forth herein.

108.    The BELOCs and Loan Documents are legally valid, binding and enforceable agreements.

109.    Pursuant to the BELOCs, McMann agreed to provide the Loans to the Plaintiffs in exchange for, among other consideration, payment of the ICA Payments.

17

110. The Plaintiffs paid the ICA Payments pursuant to the BELOCs.

111. The BELOCs require McMann to hold the ICA Payments in trust to be used solely to repay the Loans pursuant to each of the BELOC agreements.

112. Specifically, the BELOCs required McMann to establish an Interest Reserve Account and to account for the ICA Payments on McMann's books and records and apply a credit equal to the amount of each payment for the "purposes of satisfying interest payments under the LOC and upon the terms and conditions set forth herein" Exs. 1 and 2, Recitals C, D.

113. Likewise, Section 3.5 of the BELOCs required McMann to pay interest on the Loans directly from the ICA Payments. Exs. 1 and 2, §3.5.

114. Pursuant to the BELOCs, McMann agreed to refund the ICA Payments within 40 business days of receipt of the Termination Notices.

115. McMann admits that the BELOCs are valid and binding agreements.

116. McMann admits that the Plaintiffs properly and fully paid the ICA Payments.

117. McMann defaulted under the terms of the BELOCs.

118. McMann has no legally recognized justification or excuse for breaching the BELOC and Loan Documents.

119. McMann has no legally recognized justification or excuse for refusing to refund the ICA Payments.

120. The Plaintiffs properly exercised their rights to terminate the BELOCs, properly provided the Termination Notices, and are entitled to the immediate refund of the ICA Payments.

121. The Plaintiffs have fully performed all obligations under the BELOCs.

122. The Plaintiffs are entitled to a return of the ICA Payments.

123. The Plaintiffs demanded return of the ICA Payments.

124. McMann is obligated to return the ICA Payments within 40 days of receipt of the Termination Notices.

125. McMann has exercised unauthorized and wrongful assumption of control, dominion, or ownership of the ICA Payments.

126. McMann has wrongfully refused to return the ICA Payments.

127. The ICA Payments are the Plaintiffs lawful property.

128. The Plaintiffs are absolutely and unconditionally entitled to the immediate possession of the ICA Payments.

129. McMann has unlawfully converted the ICA Payments. McMann's conduct as alleged herein was willful and wanton and McMann acted with actual malice, fraud, and/or gross negligence.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against McMann:

A. Awarding the Plaintiffs $3,600,000 for McMann's conversion of the ICA Payments;

B. Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C. Awarding punitive damages in an amount to be proven at trial;

D. Awarding the Plaintiffs their costs and attorney's fees, as provided by the BELOCs and applicable law; and

E. Grant the Plaintiffs such other relief as this Court deems just.

## COUNT III
## TO AVOID AND RECOVER ACTUAL FRAUDULENT TRANSFER
### (against McMann)

130. The Plaintiffs restate and incorporate the allegations of Paragraphs 1-54, 68-78 of the Complaint as if fully set forth herein.

131.    On or about May 3, 2023, McMann caused the ICA Payments to be transferred to Genie into Chase Bank Account Number xxxxx8502.

132.    After May 3, 2023, upon information and belief the ICA Payments were transferred from the Chase Bank Account Number xxxxx8502 to another source.

133.    740 ILCS 160/5 provides, in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . .
> > . . . .
>
> (b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:
>
> > (1) the transfer or obligation was to an insider;
> >
> > (2) the debtor retained possession or control of the property transferred after the transfer;
> >
> > (3) the transfer or obligation was disclosed or concealed;
> >
> > (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> >
> > (5) the transfer was of substantially all the debtor's assets;
> >
> > (6) the debtor absconded;
> >
> > (7) the debtor removed or concealed assets;
> >
> > (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> >
> > (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> >
> > (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> >
> > (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

134.    740 ILCS 106/8 provides:

(a) In an action for relief against a transfer or obligation under this Act, a creditor, subject to the limitations in Section 9, may obtain:

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

135. McMann's transfer of the ICA Payments was a fraudulent conveyance because, among other reasons:

a.    The transfer was made with actual intent to hinder, delay, or defraud McMann's creditors, namely the Plaintiffs;

b.    Genie is an insider of McMann;

c.    The transfer was concealed from the Plaintiffs;

d.    The transfer was intended to conceal or remove McMann's assets;

e.    Upon information and belief the value of the consideration received by McMann in exchange for the transfer to Genie was not reasonably equivalent to the assets transferred; in fact, McMann received no consideration for the transfer; and

f.    McMann was insolvent or became insolvent shortly after the transfer as evidenced by its inability to funds the Loans and return the ICA Payments.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against McMann:

4889-8151-4893

A. Avoiding the $3,600,000 transfer from Genie to an unknown source to the extent necessary to satisfy the Plaintiffs' claim;

B. Permitting an attachment or other provisional remedy against the transferred funds or other property of McMann in accordance with the procedure prescribed by the Illinois Code of Civil Procedures;

C. Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

D. Awarding punitive damages in an amount to be proven at trial as McMann's conduct as alleged herein was willful and wanton and McMann acted with actual malice, fraud, and/or gross negligence;

E. Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

F. Grant the Plaintiffs such other relief as this Court deems just.

## COUNT IV
## TO AVOID AND RECOVER CONSTRUCTIVE FRAUDULENT TRANSFER
### (against McMann)

136.    The Plaintiffs restate and incorporate the allegations of Paragraphs 1-54, 68-78 of the Complaint as if fully set forth herein.

137.    On or about May 3, 2023, McMann caused the ICA Payments to be transferred to Genie into Chase Bank Account Number xxxxx8502.

138.    After May 3, 2023, upon information and belief, the ICA Payments were transferred from the Chase Bank Account Number xxxxx8502 to another source.

139.    740 ILCS 160/5(a)(2) provides, in relevant part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

* * *

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they become due.

140. 740 ILCS 106/6(a) provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

141. The Plaintiffs' claim arose before the transfer was made.

142. Upon information and belief, the value of the consideration received by McMann in exchange for the transfer to Genie was not reasonably equivalent to the assets transferred; in fact, McMann received no consideration for the transfer.

143. Upon information and belief, the transfer occurred shortly after the Plaintiffs made the ICA Payments.

144. McMann believed, or reasonably should have believed that it would incur debts beyond its ability to repay because McMann knew it could not fund the Loans and knew that Genie was an untrustworthy custodian of the ICA Payments.

145. McMann was insolvent or became insolvent shortly after the transfer as evidenced by its inability to fund the Loans and return the ICA Payments.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against McMann:

A.  Avoiding the $3,600,000 transfer from Genie to an unknown source to the extent necessary to satisfy the Plaintiffs' claim;

23

B. Permitting an attachment or other provisional remedy against the transferred funds or other property of McMann in accordance with the procedure prescribed by the Illinois Code of Civil Procedures;

C. Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

D. Awarding punitive damages in an amount to be proven at trial as McMann's conduct as alleged herein was willful and wanton and McMann acted with actual malice, fraud, and/or gross negligence;

E. Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

F. Grant the Plaintiffs such other relief as this Court deems just.


## COUNT V
## FRAUD AND FRAUDULENT MISREPRESENTATIONS
### (against McMann)

146. The Plaintiffs restate and incorporate the allegations of Paragraphs 1-54, 68-78 of the Complaint as if fully set forth herein.

147. As alleged above, McMann entered into the BELOCs and Loan Documents and obtained payment of the ICA Payments by use of false oral and written statements that were materially false, including but not limited to:

a. McMann's ability to fund the Loans;

b. McMann's agreement to hold in trust and safeguard the ICA Payments; and

c. McMann's ability and agreement to refund the ICA Payments, if and when required.

148. The statements amounted to false pretenses, were false representations, were false when made, and were in service of an actual fraud.

149. McMann knew that the aforesaid misrepresentations were untrue and omissions misleading.

24

150.     Each of the aforesaid misrepresentations and omissions were made with the intent that the Plaintiffs would rely on them to enter into the Loans and pay the ICA Payments.

151.     The Plaintiffs did in fact rely on each of the alleged omissions and misrepresentations in entering into the Loans and paying the ICA Payments.

152.     But for McMann's material omissions and misrepresentations as alleged above, the Plaintiffs would not have entered into the Loans and would not have paid the ICA Payments.

153.     The Plaintiffs justifiably relied upon McMann's material omissions and misrepresentations of fact.

154.     As a direct and proximate result of McMann's material omissions and misrepresentations of fact, the Plaintiffs have been damaged in an amount in excess of $3,600,000. McMann's conduct as alleged herein was willful and wanton and McMann acted with actual malice, fraud, and/or gross negligence.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against McMann:

A.     Awarding the Plaintiffs $3,600,000;

B.     Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C.     Awarding punitive damages in an amount to be proven at trial;

D.     Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

E.     Grant the Plaintiffs such other relief as this Court deems just.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
### (against McMann)

155.     The Plaintiffs restate and incorporate the allegations of Paragraphs 1-54, 68-78 of the Complaint as if fully set forth herein.

156.   The BELOCs and Loan Documents are legally valid, binding and enforceable agreements.

157.   Pursuant to the BELOCs, McMann agreed to provide the Loans to the Plaintiffs in exchange for, among other consideration, payment of the ICA Payments.

158.   The Plaintiffs paid the ICA Payments pursuant to the BELOCs.

159.   Pursuant to the BELOCs, McMann agreed to refund the ICA Payments within 40 business days of receipt of the Termination Notices.

160.   McMann owed a fiduciary duty to the Plaintiffs to hold the ICA Payments in trust and safeguard those funds so the funds could be applied pursuant to the BELOCs.

161.   McMann owed a fiduciary duty to the Plaintiffs to act in accordance with the BELOCs, including to hold the funds in trust, apply the funds pursuant to the parties' agreement, and return the funds as required by the BELOCs.

162.   McMann breached its fiduciary duties and misappropriated the ICA Payments by, among other breaches:

      a.    Failing to hold the ICA Payments in trust and safeguard those funds;

      b.    Failing to establish the Interest Reserve Accounts;

      c.    Failing to account for the ICA Payments on McMann's books and records;

      d.    Failing to comply with the terms of the BELOCs; and

      e.    Failing to return the ICA Payments as required by the BELOCs.

163.   McMann also violated its fiduciary duties to the Plaintiffs and the terms of the BELOCs by sending the ICA Payments to Genie when it knew Genie was not a trustworthy fiduciary of those funds, thus diverting and converting those funds.

164. McMann was aware, prior to the transfer of the ICA Payments, that Genie was not a trustworthy fiduciary because, upon information and belief, Genie and McMann previously refused and were unable to fund other loans and previously refused and were unable to refund other similar prepaid interest payments for other McMann borrowers.

165. The Plaintiffs properly exercised their rights to terminate the BELOCs, properly provided the Termination Notices, and are entitled to the immediate refund of the ICA Payments.

166. The Plaintiffs have fully performed all obligations under the BELOCs.

167. The Plaintiffs are entitled to a return of the ICA Payments.

168. McMann has failed to return the ICA Payments.

169. The Plaintiffs have been damaged as a result of McMann's breaches of its fiduciary duties in the amount not less than $3,600,000.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against McMann:

A.      Awarding judgment in the amount of $3,600,000;

B.      Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C.      Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

D.      Grant the Plaintiffs such other relief as this Court deems just.

**COUNT VII**
**CONSTRUCTIVE TRUST**
**(against McMann)**

170. The Plaintiffs restate and incorporate the allegations of Paragraphs 1-54, 68-78 of the Complaint as if fully set forth herein.

171. The BELOCs and Loan Documents are legally valid, binding and enforceable agreements.

4889-8151-4893

172.    Pursuant to the BELOCs, McMann agreed to provide the Loans to the Plaintiffs in exchange for, among other consideration, payment of the ICA Payments.

173.    The Plaintiffs paid the ICA Payments pursuant to the BELOCs.

174.    Pursuant to the BELOCs, McMann agreed to refund the ICA Payments within 40 business days of receipt of the Termination Notices.

175.    McMann owed a fiduciary duty to the Plaintiffs to hold the ICA Payments in trust and safeguard those funds so the funds could be applied pursuant to the BELOCs.

176.    McMann owed a fiduciary duty to the Plaintiffs to act in accordance with the BELOCs, including to hold the funds in trust, apply the funds pursuant to the parties' agreement, and return the funds as required by the BELOCs.

177.    McMann breached its fiduciary duties and misappropriated the ICA Payments by, among other breaches:

        a.    Failing to hold the ICA Payments in trust and safeguard those funds;

        b.    Failing to establish the Interest Reserve Accounts;

        c.    Failing to account for the ICA Payments on McMann's books and records;

        d.    Failing to comply with the terms of the BELOCs; and

        e.    Failing to return the ICA Payments as required by the BELOCs.

178.    McMann also violated its fiduciary duties to the Plaintiffs and the terms of the BELOCs by sending the ICA Payments to Genie when it knew Genie was not a trustworthy fiduciary of those funds, thus diverting and converting those funds.

179.    McMann was aware, prior to the transfer of the North Haven ICA Payment and the Wallingford ICA Payment, that Genie was not a trustworthy fiduciary because, upon information and belief, Genie and McMann previously refused and were unable to fund other loans and

28

previously refused and were unable to refund other similar prepaid interest payments for other McMann borrowers.

180. McMann engaged in actual and constructive fraud that justifies imposition of a constructive trust.

181. As alleged above, McMann entered into the BELOCs and Loan Documents and obtained payment of the ICA Payments by use of false oral and written statements that were materially false, including but not limited to:

a. McMann's ability to fund the Loans;

b. McMann's agreement to hold in trust and safeguard the ICA Payments; and

c. McMann's ability and agreement to refund the ICA Payments, if and when required.

182. The statements amounted to false pretenses, were false representations, were false when made, and were in service of an actual fraud.

183. McMann knew that the aforesaid misrepresentations were untrue and omissions misleading.

184. Each of the aforesaid misrepresentations and omissions were made with the intent that the Plaintiffs would rely on them to entered into the Loans and pay the ICA Payments.

185. The Plaintiffs did in fact rely on each of the alleged omissions and misrepresentations in entering into the Loans and paying the ICA Payments.

186. But for McMann's material omissions and misrepresentations as alleged above, the Plaintiffs would not have entered into the Loans and would not have paid the ICA Payments.

187. The Plaintiffs justifiably relied upon McMann's material omissions and misrepresentations of fact.

188.    The Plaintiffs properly exercised their rights to terminate the BELOCs, properly provided the Termination Notices, and are entitled to the immediate refund of the ICA Payments.

189.    The Plaintiffs have fully performed all obligations under the BELOCs.

190.    The Plaintiffs are entitled to a return of the ICA Payments.

191.    McMann has failed to return the ICA Payments.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against McMann:

A.    Establishing a constructive trust for the ICA Payments in the amount of $3,600,000;

B.    Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C.    Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

D.    Grant the Plaintiffs such other relief as this Court deems just.

### COUNT VIII
### BREACH OF CONTRACT
#### (against Genie)

192.    The Plaintiffs restate and incorporate the allegations of Paragraphs 1-37, 55-67, 79-92 of the Complaint as if fully set forth herein.

193.    Genie drafted the BELOCs and Loan Documents.

194.    Genie provided drafts of the BELOCs and Loan Documents to McMann.

195.    Genie knew of and understood the terms of the BELOCs and Loan Documents.

196.    At the direction of Genie and McMann, the Plaintiffs paid the ICA Payments into Genie's Chase Bank Account Number xxxxx8502.

197.    Genie received payment of the ICA Payments.

4889-8151-4893

198. Genie knew of its duty and obligation to, and agreed to, hold the ICA Payments in trust for the benefit of the Plaintiffs to be used in accordance with the BELOCs and Loan Documents.

199. Following receipt of the ICA Payments, Genie received copies of the Termination Notices.

200. Genie knew and currently knows that the Plaintiffs exercised their rights to terminate the BELOCs and Loan Documents and that the Plaintiffs are entitled to the immediate return of the ICA Payments.

201. The Plaintiffs made demand on Genie for a return of the ICA Payments.

202. McMann made demand on Genie for a return of the ICA Payments.

203. Genie, through oral and written agreements, agreed to return the ICA Payments to the Plaintiffs no later than October 13, 2023.

204. The oral and written agreements to refund the ICA Payments are legally valid, binding and enforceable agreements.

205. The Plaintiffs have performed all of their obligations under the oral and written agreements.

206. Genie materially breached the oral and written agreements by failing to return the ICA Payments.

207. Genie has no legally recognized justification or excuse for breaching the oral and written agreements.

208. The Plaintiffs have been damaged as a result of Genie's breach of the oral and written agreements in an amount not less than $3,600,000.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against Genie:

A. Awarding the Plaintiffs $3,600,000 for Genie's breach of the oral and written agreements;

B. Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C. Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

D. Grant the Plaintiffs such other relief as this Court deems just.

**COUNT IX**
**CONVERSION**
**(against Genie)**

209. The Plaintiffs restate and incorporate the allegations of Paragraphs 1-37, 55-67, 79-92 of the Complaint as if fully set forth herein.

210. Genie drafted the BELOCs and Loan Documents.

211. Genie provided drafts of the BELOCs and Loan Documents to McMann.

212. Genie knew of and understood the terms of the BELOCs and Loan Documents.

213. At the direction of Genie and McMann, the Plaintiffs paid the ICA Payments into Genie's Chase Bank Account Number xxxxx8502.

214. Genie received payment of the ICA Payments.

215. Genie owed a fiduciary duty to the Plaintiffs to hold the ICA Payments in trust and safeguard those funds so the funds could be applied pursuant to the BELOCs.

216. Genie owed a fiduciary duty to the Plaintiffs to act in accordance with the BELOCs, including to hold the funds in trust, apply the funds pursuant to the parties' agreement, and return the funds as required by the BELOCs.

217.     Genie knew of its duty and obligation to, and agreed to, hold the ICA Payments in trust for the benefit of the Plaintiffs to be used in accordance with the BELOCs and Loan Documents.

218.     Following receipt of the ICA Payments, Genie received copies of the Termination Notices.

219.     Genie knew and currently knows that the Plaintiffs exercised their rights to terminate the BELOCs and Loan Documents and that the Plaintiffs are entitled to the immediate return of the ICA Payments.

220.     The Plaintiffs made demand on Genie for a return of the ICA Payments.

221.     McMann made demand on Genie for a return of the ICA Payments.

222.     Genie, through oral and written agreements, agreed to return the ICA Payments to the Plaintiffs no later than October 13, 2023.

223.     The oral and written agreements to refund the ICA Payments are legally valid, binding and enforceable agreements.

224.     The Plaintiffs have performed all of their obligations under the oral and written agreements.

225.     Genie materially breached the oral and written agreements by failing to return the ICA Payments.

226.     The Plaintiffs are entitled to a return of the ICA Payments.

227.     The Plaintiffs demanded return of the ICA Payments.

228.     Genie is obligated to return the ICA Payments.

229.     Genie has exercised unauthorized and wrongful assumption of control, dominion, or ownership of the ICA Payments.

4889-8151-4893

230.    Genie has wrongfully refused to return the ICA Payments.

231.    The ICA Payments are the Plaintiffs lawful property.

232.    The Plaintiffs are absolutely and unconditionally entitled to the immediate possession of the ICA Payments.

233.    Genie has unlawfully converted the ICA Payments.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against Genie:

A.    Awarding the Plaintiffs $3,600,000 for Genie's conversion of the ICA Payments;

B.    Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C.    Awarding punitive damages in an amount to be proven at trial as Genie's conduct as alleged herein was willful and wanton and Genie acted with actual malice, fraud, and/or gross negligence;

D.    Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

E.    Grant the Plaintiffs such other relief as this Court deems just.

## COUNT X
## TO AVOID AND RECOVER ACTUAL FRAUDULENT TRANSFER
### (against Genie)

234.    The Plaintiffs restate and incorporate the allegations of Paragraphs 1-37, 55-67, 79-92 of the Complaint as if fully set forth herein.

235.    On or about May 3, 2023, Genie caused or directed the ICA Payments to be transferred to Genie into Chase Bank Account Number xxxxx8502.

236.    After May 3, 2023, upon information and belief, Genie transferred or caused the ICA Payments to be transferred from the Chase Bank Account Number xxxxx8502 to another source.

237.    740 ILCS 160/5 provides, in relevant part:

34

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . .

. . . .

(b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

238.     740 ILCS 106/8 provides:

(a) In an action for relief against a transfer or obligation under this Act, a creditor, subject to the limitations in Section 9, may obtain:

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

4889-8151-4893

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

239. Genie's transfer of the ICA Payments was a fraudulent conveyance because, among other reasons:

a. The transfer was made with actual intent to hinder, delay, or defraud Genie's creditors, namely the Plaintiffs;

b. Genie is an insider of McMann;

c. The transfer was concealed from the Plaintiffs;

d. The transfer was intended to conceal or remove Genie's assets;

e. Upon information and belief the value of the consideration received by Genie in exchange for the transfer to Genie was not reasonably equivalent to the assets transferred; in fact, Genie received no consideration for the transfer; and

f. Genie was insolvent or became insolvent shortly after the transfer as evidenced by its inability to return the ICA Payments and the apparent necessity of a third-party to pay Genie so Genie can refund the ICA Payments.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against Genie:

A. Avoiding the $3,600,000 transfer from Genie to an unknown source to the extent necessary to satisfy the Plaintiffs' claim;

B. Permitting an attachment or other provisional remedy against the transferred funds or other property of Genie in accordance with the procedure prescribed by the Illinois Code of Civil Procedures;

C. Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

36

D.  Awarding punitive damages in an amount to be proven at trial as Genie's conduct as alleged herein was willful and wanton and Genie acted with actual malice, fraud, and/or gross negligence;

E.  Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

F.  Grant the Plaintiffs such other relief as this Court deems just.

<u>**COUNT XI**</u>
<u>**TO AVOID AND RECOVER CONSTRUCTIVE FRAUDULENT TRANSFER**</u>
**(against Genie)**

240.  The Plaintiffs restate and incorporate the allegations of Paragraphs 1-37, 55-67, 79-92 of the Complaint as if fully set forth herein.

241.  On or about May 3, 2023, Genie caused and directed the ICA Payments to be transferred to Genie into Chase Bank Account Number xxxxx8502.

242.  After May 3, 2023, upon information and belief, Genie transferred or caused the ICA Payments to be transferred from the Chase Bank Account Number xxxxx8502 to another source.

243.  740 ILCS 160/5(a)(2) provides, in relevant part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
* * *
(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they become due.

244.  740 ILCS 106/6(a) provides:

4889-8151-4893

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

245.    The Plaintiffs' claim arose before the transfer was made.

246.    Upon information and belief, the value of the consideration received by Genie in exchange for the transfer from Genie to an unknown source was not reasonably equivalent to the assets transferred; in fact, Genie received no consideration for the transfer.

247.    Upon information and belief, the transfer occurred shortly after the Plaintiffs made the ICA Payments.

248.    Genie believed, or reasonably should have believed that it would incur debts beyond its ability to repay because Genie knew it could not refund the ICA Payments when the transfer was made.

249.    Genie was insolvent or became insolvent shortly after the transfer as evidenced by its inability to return the ICA Payments and the apparent necessity of a third-party to pay Genie so Genie can refund the ICA Payments.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against Genie:

A.    Avoiding the $3,600,000 transfer from Genie to an unknown source to the extent necessary to satisfy the Plaintiffs' claim;

B.    Permitting an attachment or other provisional remedy against the transferred funds or other property of Genie in accordance with the procedure prescribed by the Illinois Code of Civil Procedures

C.    Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

38

D.     Awarding punitive damages in an amount to be proven at trial as Genie's conduct as alleged herein was willful and wanton and Genie acted with actual malice, fraud, and/or gross negligence;

E.     Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

F.     Grant the Plaintiffs such other relief as this Court deems just.

**COUNT XII**
**FRAUD AND FRAUDULENT MISREPRESENTATIONS**
**(against Genie)**

250.     The Plaintiffs restate and incorporate the allegations of Paragraphs 1-37, 55-67, 79-92 of the Complaint as if fully set forth herein.

251.     As alleged above, Genie induced the Plaintiffs to transfer the ICA Payments to Genie at the direction of Genie (through McMann) by use of false representations, including terms included in the BELOCs provided by Genie to McMann, that were materially false, including but not limited to:

a.     Genie's agreement to hold in trust and safeguard the ICA Payments; and

b.     Genie's ability and agreement to refund the ICA Payments, if and when required.

252.     The statements amounted to false pretenses, were false representations, were false when made, and were in service of an actual fraud.

253.     Genie knew that the aforesaid misrepresentations were untrue and omissions misleading.

254.     Each of the aforesaid misrepresentations and omissions were made with the intent that the Plaintiffs would rely on them to enter into the Loans and pay the ICA Payments.

255.     The Plaintiffs did in fact rely on each of the alleged omissions and misrepresentations in paying the ICA Payments.

256.    But for Genie's material omissions and misrepresentations as alleged above, the Plaintiffs would not have entered into the Loans and would not have paid the ICA Payments.

257.    The Plaintiffs justifiably relied upon Genie's material omissions and misrepresentations of fact.

258.    As a direct and proximate result of Genie's material omissions and misrepresentations of fact, the Plaintiffs have been damaged in an amount in excess of $3,600,000. Genie's conduct as alleged herein was willful and wanton and Genie acted with actual malice, fraud, and/or gross negligence.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against Genie:

A.    Awarding the Plaintiffs $3,600,000;

B.    Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C.    Awarding punitive damages in an amount to be proven at trial;

D.    Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

E.    Grant the Plaintiffs such other relief as this Court deems just.

## COUNT XIII
## BREACH OF FIDUCIARY DUTY
### (against Genie)

259.    The Plaintiffs restate and incorporate the allegations of Paragraphs 1-37, 55-67, 79-92 of the Complaint as if fully set forth herein.

260.    Genie drafted the BELOCs and Loan Documents.

261.    Genie provided drafts of the BELOCs and Loan Documents to McMann.

262.    Genie knew of and understood the terms of the BELOCs and Loan Documents.

4889-8151-4893

263.    At the direction of Genie and McMann, the Plaintiffs paid the ICA Payments into Genie's Chase Bank Account Number xxxxx8502.

264.    Genie received payment of the ICA Payments.

265.    Genie owed a fiduciary duty to the Plaintiffs to hold the ICA Payments in trust and safeguard those funds so the funds could be applied pursuant to the BELOCs.

266.    Genie owed a fiduciary duty to the Plaintiffs to act in accordance with the BELOCs, including to hold the funds in trust, apply the funds pursuant to the parties' agreement, and return the funds as required by the BELOCs.

267.    Genie knew of its duty and obligation to, and agreed to, hold the ICA Payments in trust for the benefit of the Plaintiffs to be used in accordance with the BELOCs and Loan Documents.

268.    Following receipt of the ICA Payments, Genie received copies of the Termination Notices.

269.    Genie knew and currently knows that the Plaintiffs exercised their rights to terminate the BELOCs and Loan Documents and that the Plaintiffs are entitled to the immediate return of the ICA Payments.

270.    The Plaintiffs made demand on Genie for a return of the ICA Payments.

271.    McMann made demand on Genie for a return of the ICA Payments.

272.    Genie, through oral and written agreements, agreed to return the ICA Payments to the Plaintiffs no later than October 13, 2023.

273.    The oral and written agreements to refund the ICA Payments are legally valid, binding and enforceable agreements.

4889-8151-4893

274.    Genie breached its fiduciary duties and misappropriated the ICA Payments by, among other breaches:

       a.      Failing to hold the ICA Payments in trust and safeguard those funds; and

       b.      Failing to return the ICA Payments as required by the BELOCs.

275.    The Plaintiffs properly exercised their rights to terminate the BELOCs, properly provided the Termination Notices, and are entitled to the immediate refund of the ICA Payments.

276.    The Plaintiffs have fully performed all obligations under the oral and written agreements.

277.    The Plaintiffs are entitled to a return of the ICA Payments.

278.    Genie has failed to return the ICA Payments.

279.    The Plaintiffs have been damaged as a result of Genie's breaches of its fiduciary duties in the amount not less than $3,600,000.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against Genie:

A.      Awarding judgment in the amount of $3,600,000;

B.      Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C.      Awarding the Plaintiffs their costs and attorney's fees, as provided by law;

D.      Grant the Plaintiffs such other relief as this Court deems just.

### COUNT XIV
### CONSTRUCTIVE TRUST
### (against Genie)

280.    The Plaintiffs restate and incorporate the allegations of Paragraphs 1-37, 55-67, 79-92 of the Complaint as if fully set forth herein.

281.    Genie drafted the BELOCs  and Loan Documents.

282.  Genie provided drafts of the BELOCs and Loan Documents to McMann.

283.  Genie knew of and understood the terms of the BELOCs and Loan Documents.

284.  At the direction of Genie and McMann, the Plaintiffs paid the ICA Payments into Genie's Chase Bank Account Number xxxxx8502.

285.  Genie received payment of the ICA Payments.

286.  Genie knew of its duty and obligation to, and agreed to, hold the ICA Payments in trust for the benefit of the Plaintiffs to be used in accordance with the BELOCs and Loan Documents.

287.  Following receipt of the ICA Payments, Genie received copies of the Termination Notices.

288.  Genie knew and currently knows that the Plaintiffs exercised their rights to terminate the BELOCs and Loan Documents and that the Plaintiffs are entitled to the immediate return of the ICA Payments.

289.  The Plaintiffs made demand on Genie for a return of the ICA Payments.

290.  McMann made demand on Genie for a return of the ICA Payments.

291.  Genie, through oral and written agreements, agreed to return the ICA Payments to the Plaintiffs no later than October 13, 2023.

292.  The oral and written agreements to refund the ICA Payments are legally valid, binding and enforceable agreements.

293.  The Plaintiffs have performed all of their obligations under the oral and written agreements.

294.  Genie materially breached the oral and written agreements by failing to return the ICA Payments.

43

295. Genie has no legally recognized justification or excuse for breaching the oral and written agreements.

296. Genie owed a fiduciary duty to the Plaintiffs to hold the ICA Payments in trust and safeguard those funds so the funds could be applied pursuant to the BELOCs.

297. Genie owed a fiduciary duty to the Plaintiffs to act in accordance with the BELOCs, including to hold the funds in trust, apply the funds pursuant to the parties' agreement, and return the funds as required by the BELOCs.

298. Genie knew of its duty and obligation to, and agreed to, hold the ICA Payments in trust for the benefit of the Plaintiffs to be used in accordance with the BELOCs and Loan Documents.

299. Genie breached its fiduciary duties and misappropriated the ICA Payments by, among other breaches:

    a. Failing to hold the ICA Payments in trust and safeguard those funds; and

    b. Failing to return the ICA Payments as required by the BELOCs.

300. Genie engaged in actual and constructive fraud that justifies imposition of a constructive trust.

301. As alleged above, Genie obtained payment of the ICA Payments by use of false oral and written statements that were materially false, including but not limited to:

    a. Genie's agreement to hold in trust and safeguard the ICA Payments; and

    b. Genie's ability and agreement to refund the ICA Payments, if and when required.

302. The statements amounted to false pretenses, were false representations, were false when made, and were in service of an actual fraud.

4889-8151-4893

303.    Genie knew that the aforesaid misrepresentations were untrue and omissions misleading.

304.    Each of the aforesaid misrepresentations and omissions were made with the intent that the Plaintiffs would rely on them to pay the ICA Payments.

305.    The Plaintiffs did in fact rely on each of the alleged omissions and misrepresentations in paying the ICA Payments.

306.    But for Genie's material omissions and misrepresentations as alleged above, the Plaintiffs would not have entered into the Loans and would not have paid the ICA Payments.

307.    The Plaintiffs justifiably relied upon Genie's material omissions and misrepresentations of fact.

308.    The Plaintiffs properly exercised their rights to terminate the BELOCs, properly provided the Termination Notices, and are entitled to the immediate refund of the ICA Payments.

309.    The Plaintiffs have fully performed all obligations under the oral and written agreements with Genie.

310.    The Plaintiffs are entitled to a return of the ICA Payments.

311.    Genie has failed to return the ICA Payments.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against Genie:

A.    Establishing a constructive trust for the ICA Payments in the amount of $3,600,000;

B.    Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C.    Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

D.    Grant the Plaintiffs such other relief as this Court deems just.

## COUNT XV
## UNJUST ENRICHMENT
### (against Genie)

312.     The Plaintiffs restate and incorporate the allegations of Paragraphs 1-37, 55-67, 79-92 of the Complaint as if fully set forth herein.

313.     Genie drafted the BELOCs and Loan Documents.

314.     Genie provided drafts of the BELOCs and Loan Documents to McMann.

315.     Genie knew of and understood the terms of the BELOCs and Loan Documents.

316.     At the direction of Genie and McMann, the Plaintiffs paid the ICA Payments into Genie's Chase Bank Account Number xxxxx8502.

317.     Genie received payment of the ICA Payments.

318.     Genie knew of its duty and obligation to, and agreed to, hold the ICA Payments in trust for the benefit of the Plaintiffs to be used in accordance with the BELOCs and Loan Documents.

319.     Following receipt of the ICA Payments, Genie received copies of the Termination Notices.

320.     Genie knew and currently knows that the Plaintiffs exercised their rights to terminate the BELOCs and Loan Documents and that the Plaintiffs are entitled to the immediate return of the ICA Payments.

321.     The Plaintiffs made demand on Genie for a return of the ICA Payments.

322.     McMann made demand on Genie for a return of the ICA Payments.

323.     Genie has refused to return the ICA Payments.

324.     By retaining the funds, Genie has unjustly retained the benefit of those funds to the detriment of the Plaintiffs.

325.    The Plaintiffs are entitled to a return of the ICA Payments.

326.    The Plaintiffs demanded return of the ICA Payments.

327.    Genie is obligated to return the ICA Payments and has no legal or colorable right to keep the ICA Payments.

328.    Genie has wrongfully refused to return the ICA Payments.

329.    The ICA Payments are the Plaintiffs lawful property.

330.    Genie's retention of the ICA Payments violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against Genie:

A.    Awarding the Plaintiffs $3,600,000 for Genie's unjust enrichment related to retention of the ICA Payments;

B.    Awarding the Plaintiffs prejudgment interest and post-judgment interest, as permitted by Illinois law;

C.    Awarding the Plaintiffs their costs and attorney's fees, as provided by law; and

D.    Grant the Plaintiffs such other relief as this Court deems just.

4889-8151-4893

Dated: November 27, 2023

Respectfully submitted,

NORTH HAVEN LODGING PARTNERS
LLC and WALLINGFORD LODGING
PARTNERS LLC

By:_____ /s/ *William J. McKenna*_____
    One of Its Attorneys

William J. McKenna (IL Bar No. 3124753)
Andrew T. McClain (IL Bar No. 6313453)
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, Illinois 60654
Telephone: 312.832.4500
Fax: 312.832.4700
wmckenna@foley.com
amcclain@foley.com