**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NORTH HAVEN LODGING PARTNERS LLC, a South Dakota limited liability company, and WALLINGFORD LODGING PARTNERS LLC, a South Dakota limited liability company, | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 1:23-cv-16264 |
| vs. | )<br>)<br>) |
| MCMANN COMMERCIAL LENDING LLC n/k/a MCMANN PROFESSIONAL SERVICES LLC and/or MCMANN CAPITAL, an Illinois limited liability company, and GENIE INVESTMENTS NV, a Nevada corporation, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## DECLARATION OF SHAILESH PATEL

Pursuant to 28 U.S.C. § 1746(1), Shailesh Patel states and declares as follows:

1. I have personal knowledge of the matters set forth in this Declaration. If sworn as a witness in this case, I could testify competently to the statements contained herein.

2. All the statements made herein are of a factual nature. I do not intend to and am not authorized to disclose any attorney-client communications nor any work product privileged information or materials.

3. I am the Manager of North Haven Lodging Partners LLC ("North Haven").

4. I am also the Manager of Wallingford Lodging Partners LLC ("Wallingford").

5. The following facts are based upon my personal knowledge and review of pertinent records, and I would be competent to testify regarding the same.

1

6. North Haven and Wallingford are in the hotel business and needed funding to begin construction of a 105-room limited-service hotel.

7. On April 10, 2023, Defendant McMann Commercial Lending LLC n/k/a McMann Professional Services LLC and/or McMann Capital ("McMann"), through Walter Trock, Michael Lanza, and others, agreed to make loans to both North Haven and Wallingford to facilitate construction in the form of two $18,000,000 lines of credit (the "North Haven Loan" and the "Wallingford Loan," collectively, the "Loans").

8. The North Haven Loan is governed by a Business Expansion Line of Credit Agreement ("North Haven BELOC") and is evidenced by a Promissory Note ("North Haven Note") in the principal amount of $18,900,000. A copy of the North Haven BELOC is attached as **Exhibit 1**. The North Haven Note is attached to the North Haven BELOC as Exhibit A. *See* Ex. 1 North Haven BELOC, Ex. A.

9. The Wallingford Loan is governed by a Business Expansion Line of Credit Agreement ("Wallingford BELOC," together with the North Haven BELOC, the "BELOCs") and is evidenced by a Promissory Note ("Wallingford Note") in the principal amount of $18,900,000. A copy of the Wallingford BELOC is attached as **Exhibit 2**. The Wallingford Note is attached to the Wallingford BELOC as Exhibit A. *See* Ex. 2, Wallingford BELOC, Ex. A.

10. The BELOCs, Promissory Notes, and other documents executed in connection with the Loans, collectively the "Loan Documents," required North Haven and Wallingford to each pay $1,800,000 to McMann as prepaid interest for the BELOCs (the "ICA Payments").

11. The BELOCs required McMann to fund the advances under the Loans according to the parties' agreed-upon schedule, with the first funding advance to occur within seventy-five (75) days of the ICA Payments. *See* Exs. 1 and 2, §7.1 and Ex. B, Tranche Schedule.

12. The BELOCs required McMann to establish an Interest Reserve Account and to account for the ICA Payments on McMann's books and records and apply a credit equal to the amount of each payment for "purposes of satisfying interest payments under the LOC and upon the terms and conditions set forth herein." Exs. 1 and 2, Recitals C, D.

13. On May 3, 2023, North Haven and Wallingford wired the ICA Payments as instructed by McMann to a Chase Bank Account, Account Number xxxxx8502 in the name "Genie Investments NV." *See* Ex. C to Ex. 4.

14. Both McMann and Defendant Genie Investments NV ("Genie") confirmed in writing that Genie received the ICA Payments. *See* Ex. E to Ex. 4.

15. After receipt of the ICA Payments, the Loans were not funded as required by the BELOCs.

16. Section 13.7(a) of the BELOCs provided North Haven and Wallington the right to terminate the agreement and receive a refund of the ICA Payments if the Loans were not timely funded. *See* Exs. 1 and 2, §13.7(a).

17. On August 18, 2023, North Haven and Wallingford each tendered a Termination Letter for the Loans and demanded a refund of the ICA Payments (the "Termination Notices"). A copy of each of the Termination Letters is attached as **Exhibit 3.**

18. The Termination Notices were sent to both McMann and Genie via a communication platform utilized by McMann and Genie called Zoomeral.

19. Under the BELOCs, McMann, through Genie, was obligated to refund the ICA Payments on or before October 17, 2023.

20. To date, McMann and Genie have refused to refund the ICA Payments.

4878-4145-5254.3

21. On October 24, 2023, counsel for McMann sent a letter to Genie demanding Genie immediately refund the ICA Payments to Plaintiffs. A copy of the October 24, 2023 letter is attached as **Exhibit 4.**

22. On September 14, 2023, Genie represented, in writing via Zoomeral, that it would refund the ICA Payments on October 13, 2023. *See* Exhibit E to Exhibit 4.

23. Instead of refunding the payments on October 13, 2023, Genie, through its counsel, sent a letter to the Plaintiffs alleging Genie was unable to refund the ICA Payments because of "the ongoing failure of its capital provider to comply with its contractual obligations to provide funds to Genie." A copy of the October 13, 2023 letters is attached as **Group Exhibit 5**.

24. In its October 13, 2023 Letter, Genie stated that it was working to "compel the capital provider to deliver the funds it owes, so that Genie can, in turn, provide refunds to its borrowers." *See* Ex. 5.

25. On October 20, 2023, Genie sent Zoomeral messages to Plaintiffs stating "We would like to reach out to you regarding the refund you have requested…Rest assured [Genie] is working diligently, so that your refund can be credited back to you as soon as possible, *if made possible*…" A copy of the Genie's Zoomeral Messages with North Haven is attached as **Exhibit 6**. A copy of Genie's Zoomeral Messages with Wallingford is attached as **Exhibit 7**.

26. In an October 30, 2023 Zoomeral message to Plaintiffs, Genie stated, "As you know from previous communications, Genie Investments has been dealing with an ongoing failure by its capital provider to meet its contractual obligations to Genie, which in turn is preventing Genie from providing both advances and refunds to its borrowers." *See* Exs. 6 and 7.

27. Plaintiffs never authorized any other use of their funds other than to be held in trust pursuant to the BELOCs.

4878-4145-5254.3

28. Genie has failed to refund any amount of the ICA Payments to Plaintiffs.

DATED: December 14, 2023

_____
Shailesh Patel