**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NORTH HAVEN LODGING PARTNERS LLC, a South Dakota limited liability company, and WALLINGFORD LODGING PARTNERS LLC, a South Dakota limited liability company, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:23-cv-16264 |
| vs. | ) ) | |
| MCMANN COMMERCIAL LENDING LLC n/k/a MCMANN PROFESSIONAL SERVICES LLC and/or MCMANN CAPITAL, an Illinois limited liability company, and GENIE INVESTMENTS NV, a Nevada corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF AND HEARING ON PRELIMINARY INJUNCTION

4857-8290-5245

Plaintiffs[1] seek this Court's intervention to prevent Defendants McMann and Genie from further dissipating Plaintiffs' $3,600,000 and to account for all of Plaintiffs' funds, including all funds that have already been transferred. The Defendants' Responses[2] confirm the Plaintiffs' fear that Defendants have engaged in a coordinated Ponzi-scheme-like shell game.

The Responses lay the framework of the Defendants' scheme. McMann allegedly obtained a loan from Genie, with respect to which neither Defendant has submitted any written evidence. McMann then supposedly agreed to loan Genie's money to Plaintiffs. Genie Resp. at 2. McMann and Plaintiffs entered into two written loan agreements, the BELOCs, which required Plaintiffs to pay the two upfront $1,800,000 ICA Payments, totaling $3,600,000, to McMann. The ICA Payments were purported to be prepaid interest for each loan, and the Loan Documents required McMann to use the ICA Payments to pay interest "until such funds are depleted." Decl. S. Patel, Exs. 1, 2, §3.5. At McMann's direction, Plaintiffs wired the ICA Payments to Genie. Genie received the ICA Payments. Unbeknownst to Plaintiffs, Genie and McMann conspired to use the ICA Payments to pay McMann's loan obligations to Genie, instead of treating the ICA Payments as Plaintiffs' prepaid interest which could only be used according to the terms of the BELOCs. If the Defendants' responses are to be taken as true, each Defendant knew the ICA Payments would never be used for their intended purpose—Plaintiffs' prepaid interest—yet directed Plaintiffs to make them anyway. Genie apparently used the ICA Payments to "defray other expenses," Genie

---

[1] North Haven Lodging Partners LLC, is a South Dakota limited liability company with its principal place of business located at 2517 West Brentridge Circle, Sioux Falls, South Dakota. The members of North Haven are PB Corporation TN, a Georgia corporation; Hari Har Management, Inc. a South Dakota corporation, and Vihang Patel and Mansi Patel, each domiciled in Connecticut. Wallingford Lodging Partners LLC, is a South Dakota limited liability company with its principal place of business located at 2517 West Brentridge Circle, Sioux Falls, South Dakota. The sole member of Wallingford is Shailesh Patel, who is domiciled in South Dakota.

[2] Genie's Opposition to Plaintiffs' Motion for Temporary Restraining Order and Injunctive Relief [Dkt. No. 22] ("Genie Response or Genie Resp.") and McMann's Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Injunctive Relief and Hearing on Preliminary Injunction [Dkt. No. 23] ("McMann Response or McMann Resp., together with Genie Response, the "Responses".)

Resp., at 8, all the while hoping a separate unspecified and undocumented financial obligation owed by an unidentified debtor would suddenly materialize and save Genie from financial ruin and veil the scheme. In a great example of a classic street hustler shell game, Genie claims no harm, no foul because the ICA Payments were actually McMann's money that McMann could freely use to pay Genie and Genie could, in turn, use those funds for whatever it chooses. McMann on the other hand says in essence "nothing under this shell" and seeks to wipe its hands clean of the entire scheme by alleging it never had Plaintiffs money—by its own choice and direction without disclosure to Plaintiffs—because the BELOCs "*contemplated assignment*" and "Genie *assumed* McMann's obligations under the [BELOCs]." McMann Resp., at 14. Similar to Genie's dearth of evidentiary support, McMann provides no written evidence of this assignment and assumption and McMann's President does not testify to this point in his Declaration. In fact, this directly contradicts McMann's President's statement to Plaintiffs that Plaintiffs' "agreements for your loan are with McMann." Decl. P. Patel, Ex. 1. Where is the BELOC between McMann and Genie? Where is the notice of, and documentation of, the assignment and assumption of Plaintiffs' BELOCs? And, most importantly, where are Plaintiffs' ICA Payments for the loans that were never funded and were to be held as Plaintiffs' prepaid interest? This situation has all the signposts of a classic Ponzi-scheme.

## ARGUMENT

The Responses do nothing to defeat the Motion. Instead, the Responses bolster Plaintiffs' claims that the Defendants have engaged in a coordinated scheme to defraud Plaintiffs. This apparent shell game and the finger-pointing among Defendants reinforce the necessity for preliminary relief and further support Plaintiffs' claims of constructive trust, fraudulent transfer, and unjust enrichment.

1.      **Plaintiffs Motion is Not Barred By *Grupo Mexicano***

Plaintiffs are entitled to preliminary relief in this context because they allege cognizable equitable claims.  Both Defendants argue Plaintiffs' Motion is barred by *Grupo Mexicano de Desarollo, S.A. v. All. Bond Fund*, 527 U.S. 308 (1999) because Plaintiffs simply seek monetary damages.  This is factually inaccurate and not supported by well-established case law.  As the Fourth Circuit succinctly stated: "That money damages are claimed along with equitable relief does not defeat the district court's equitable powers." *U.S. ex Rel Rahman v. Oncology Associates*, 198 F.3d 489 (4th Cir. 1999).  This is the precise scenario presented here.  The Plaintiffs seek both monetary damages and equitable relief, and this Court can and should grant the Motion.

In *Oncology Associates*, the United States brought claims against the defendants under the False Claims Act for defrauding Medicare. *Oncology Associates*, 198 F.3d at 493.  The complaint sought damages in excess of $86 million and included both claims for monetary damages and equitable claims for constructive trust and fraudulent transfers. The Fourth Circuit affirmed the district court's preliminary injunction order that froze the defendants' assets despite the defendants arguing the injunction was barred by *Grupo Mexicano* because the action was "overwhelmingly" a suit for money damages rather than equitable relief.  *Id.* at 494-95.  This is the exact same argument the Defendants present.  The Fourth Circuit rejected this argument because the complaint alleged cognizable equitable claims stating:

> [W]hen the **plaintiff creditor asserts a cognizable claim to specific assets of the defendant *or* seeks a remedy involving those assets**, a court may in the interim invoke equity to preserve the *status quo* pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested.

*Id.* at 496 (emphasis added).  The Fourth Circuit followed the Supreme Court's well-established precedent in *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289 (1940), which provides a

district court with the authority to issue an injunction "in aid of recovery" sought in the lawsuit. The Fourth Circuit reasoned that "To impose a constructive trust over assets obtained through fraud requires preservation of the assets, and to be able to void fraudulent transfers of assets obtained through fraud likewise requires that those assets be preserved." *Oncology Associates*, 198 F.3d at 498.

The Court's analysis in *Oncology Associates* makes logical and legal sense. When a party alleges equitable claims, a Court can exercise its equitable powers to issue an injunction to preserve the *status quo* to ensure that the Court can ultimately grant equitable relief at the end of the case. For example, Plaintiffs here seek a constructive trust and allege fraudulent transfer claims against both Defendants. The ultimate judgment on these claims would be a constructive trust for the ICA Payments and voiding the transfers of the ICA Payments. Each claim requires there to be assets for this Court to issue its ultimate judgment. If an injunction is not issued, then this Court may likely be barred from issuing this ultimate relief, not because the Court determines the relief is not legally warranted, but because the Defendants dissipated Plaintiffs' ICA Payments. The purpose of a preliminary injunction that preserves the *status quo* is to avoid this unjust result and ensure the Court can issue the ultimate relief in the case.

None of the Defendants' cited cases are relevant. In *Oak Leaf Outdoors, Inc. v. Double Dragon International, Inc.*, 812 F. Supp 2d 944 (C.D. Ill. 2011) a seller of goods sought repayment from the buyer and requested a preliminary injunction prohibiting the buyer from transferring funds. The seller admitted it was only seeking monetary relief for payment of the goods. *Id*. at 948. The court rejected the seller's request for preliminary relief because the case was "a straightforward breach of contract situation." *Id*. Moreover, the court noted there were no claims for "theft, breach of fiduciary duty, fraud, or criminal conversion." Plaintiffs' complaint here

4

includes claims of fraud, conversion, and breach of fiduciary duty. Likewise, *Thiel v. Wride*, No. 12-C-530, 2014 WL 12731442, at *2-3 (E.D. Wis. May 15, 2014) is inapplicable because the plaintiff asserted "a generic claim for money damages" and did not seek equitable relief. The Defendants' Responses illustrate they have engaged in a coordinated shell game. Each Defendant denies contractual liability to the Plaintiffs, which bolsters the viability of Plaintiffs' equitable claims. The Responses actually support Plaintiffs' equitable claims and demonstrate that Plaintiffs' claims are anything but generic claims for money damages. Put simply, Plaintiffs seek cognizable and viable equitable claims against each Defendant. The case law cited herein and in the Motion support this Court's authority to grant the Motion and issue preliminary relief despite Plaintiffs' other counts that include monetary damages.

2.      **Plaintiffs Have No Adequate Remedy At Law And Will Suffer Irreparable Harm If Relief Is Not Granted.**

Plaintiffs have no adequate remedy at law and will be irreparably harmed if the Motion is not granted because the Defendants may become, if not presently are, insolvent before final judgment can be entered. Defendants admitted during the December 28, 2023 hearing, that they do not have the present ability to pay their debts. December 28, 2023 Transcript attached hereto as **Exhibit A**, 15:4-5, 16:10-12, 18:6 ("Genie is in a highly illiquid situation"); Decl. W. Trock, ¶7 ("If the Court were to order McMann to freeze $3.6 million dollars of McMann's assets, that would effectively put McMann out of business."). Courts consider adequate remedy at law and irreparable harm as one in the same, and the Seventh Circuit has succinctly described the analysis stating:

> The absence of an adequate remedy at law is a precondition to any form of equitable relief. The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait till the end of trial to get that relief....Only if he will suffer irreparable

5

> harm in the interim—that is, harm that cannot be prevented or fully rectified by the final judgment after trial—can he get a preliminary injunction. Where the only remedy sought at trial is damages, the two requirements—irreparable harm, and no adequate remedy at law—merge. The question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded damages.

*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Defendants allege that the Plaintiffs have an adequate remedy at law and there is no risk of harm because Plaintiffs can simply obtain a money judgment at the end of the case. This rudimentary argument does not address Plaintiffs' case law or the nuances of this area of law. The Seventh Circuit has held that monetary damages can be inadequate when "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Roland Mach. Co.*, 749 F.2d at 386; *see also David White Instruments, LLC v. TLZ, Inc.*, No. 02 C 7156, 2002 WL 31741235, at *6 (N.D. Ill. Dec. 4, 2002) ("Irreparable harm may be established by showing that the alleged infringer is financially irresponsible or might be judgment-proof at the end of the litigation."). This is precisely the scenario presented here. Forcing Plaintiffs to wait until a money judgment is entered will likely prove to be an inadequate remedy and cause irreparable harm because the Defendants may be uncollectable and have exhibited financial irresponsibility.

Contrary to the Defendants' arguments, every single plaintiff cannot seek preliminary relief merely because the plaintiff is worried about collecting on its ultimate judgment. *See e.g.*, McMann Resp., at 1. The case law on this point compels the court to analyze the specific facts of the case, including the defendant's conduct, to determine if waiting for a monetary judgment is appropriate. For example, in *Caterpillar Inc. v. Jerryco Footwear, Inc.*, 880 F. Supp. 578, 587 (C.D. Ill. 1994), the court denied reconsideration of its preliminary injunction related to a licensee's failure to pay royalties. The defendants engaged in a series of deceptive, bad faith acts that included falsifying

documents and making material misrepresentations. In affirming the preliminary injunction, the court held that:

> Considering the defendants' past intentionally deceptive, bad faith acts, the Court finds that there is a high probability that, absent a preliminary injunction, the defendants would engage in further acts designed to defraud [plaintiff] and frustrate enforcement of any judgment the Court might enter. This is a form of irreparable harm warranting preliminary injunction relief.

*Id*. at 587; *see also General Electric Capital Corporation v. Alliance Transport*, 2009 WL 10702069 (ND Ill. Feb. 13, 2009) (awarding preliminary injunction when defendant's financial conditions shows defendant "may well be unable to pay any award of damages."); *but see ZCM Asset Holding Co. (Bermuda) v. Allamian,* No. 01 C 6250, 2002 WL 31870162, at *4 (N.D. Ill. Dec. 20, 2002) (acknowledging irreparable harm could be found when party might be judgment-proof, but rejecting this argument because the defendants were backed an international insurance company and could "satisfy any judgment against it.")*.*

The exact same rationale applies to the present case. The Defendants have engaged in a deceptive shell game and have engaged in months of deceptive, bad faith acts that have left each Defendant potentially uncollectable.[3] The Defendants admit they are each uncollectable and both are financially irresponsible as evidenced by the utter disregard of their obligations to preserve and properly apply the ICA Payments. *See e.g.*, Ex. A, December 28, 2023 Transcript, 15:4-5, 16:10-12, 18:6 ("Genie is in a highly illiquid situation"); Decl. W. Trock, ¶7 ("If the Court were to order McMann to freeze $3.6 million dollars [sic] of McMann's assets, that would effectively put McMann out of business."). The Defendants continue to engage in deceptive, bad faith acts. Genie alleged for months it was waiting for money from a "capital provider" (i.e., an investor), but this

---

[3] Based on the statements made at the December 28, 2023 hearing, it also appears likely that neither Defendant actually had the financial ability to fund the BELOCs at the time it was represented to Plaintiffs they did, at the time the BELOCs were executed, and at the time the ICA Payments made.

investor turns out to be a debtor that allegedly owes Genie a large sum of money. Decl. S. Patel, ¶23, Ex. 5; Ex. A, December 28, 2023 Transcript, 16:12-18. Genie materially misrepresented facts for months while stringing along Plaintiffs. McMann willfully ordered Plaintiffs to wire the ICA Payments to Genie when McMann apparently knew those payments would never be used as prepaid interest for Plaintiffs' BELOCs as required by the Loan Documents. Were the Plaintiffs' wires intended to satisfy the required ICA Payments to McMann under the BELOCs, or intended to satisfy a separate debt McMann allegedly owed Genie, or intended to fulfill the ICA Payments on the BELOCs allegedly assigned/assumed by Genie? The deception continues even during briefing and argument in opposition to Plaintiffs' Motion.

Yet, McMann in no uncertain terms stated that Plaintiffs' demand for return of the ICA Payments has "complied with each and every term of the BELOCs." Decl. S. Patel, Ex. 4. Now, McMann disingenuously argues Plaintiffs have not complied with the BELOCs and that McMann has no liability because Genie assumed the BELOCs and Genie argues it has no liability because the BELOCs were between Plaintiffs and McMann. Denying the Motion will allow the Defendants to continue their misconduct and further reinforce their shell game and, most importantly, frustrate enforcement of any judgment this Court may enter. This is the exact outcome the Court in *Caterpillar* sought to avoid when it exercised its equitable powers and affirmed a preliminary injunction. This Court should do the same.

3. **Plaintiffs Have a Likelihood of Success on the Merits.**

Plaintiffs are likely to succeed on each of their claims against the Defendants. The question of likelihood of success is a "low standard requiring only a 'better than negligible chance of success on the merits.'" *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of US of America, Inc.*, 549

8

F.3d 1079, 1096 (7th Cir. 2008). Plaintiffs amply exceed this low standard as evidenced by the factual support in the Complaint, Motion, and this Reply.

As an initial matter, Plaintiffs did not waive any right to assert claims against either Genie or McMann. Every count in the Complaint is properly pleaded and viable. McMann misinterprets the BELOCs' limitation of monetary damages as an exculpation clause or waiver of claims clause. No such clause appears in the BELOCs. Instead, Section 14 of the BELOCs limits Plaintiffs damages to "actual compensatory damages."[4] Decl. S. Patel, Exs. 1, 2, §14.1. This limitation of damages is distinctly different than an exculpatory clause that waives claims for negligence, for example, or the right to seek equitable relief in the form of injunctive relief. Plaintiffs do not waive any claims, defenses, or causes of action in Section 14.1 or anywhere else in the BELOCs. Even if Section 14.1 was an exculpatory clause, which it is not, Illinois courts do not enforce such clauses for willful or wanton misconduct. *IMR USA, Inc. v. GES Exposition Servs., Inc.*, No. 04 C 100, 2005 WL 736589, at *5 (N.D. Ill. Mar. 31, 2005) ("exculpatory clauses that encompass willful and wanton conduct are unenforceable as a mater [sic] of law.") McMann would have this Court apply an exculpatory clause to its fraudulent conduct, which is contrary to Illinois law and public policy. *In re Estate of Feinberg*, 235 Ill. 2d 256, 265 (2009) (stating courts will not enforce contract provisions that violate public policy, including those that are "injurious to the interests of the public, contravene[s] some established interest of society…against good morals.")

Likewise, McMann's argument that an obligation to refund the ICA Payments has not been triggered because Plaintiffs did not provide proper notice lacks any merit. McMann Resp., at 13-14. There is no question that McMann timely received Plaintiffs' Termination Notices. McMann received the Termination Notices via email on August 17, 2023. After McMann's receipt, on

---

[4] Whether this limitation is enforceable is not before the Court, and Plaintiffs reserve the right to seek all types of monetary damages, including punitive damages.

9

August 18, 2023, McMann, responding to the same email that provided the Termination Notices, directed Plaintiffs to also submit Plaintiffs' Termination Notices via the Zoomeral platform, which Plaintiffs did. January 16, 2024, Decl. S. Patel, ¶¶11, 12; Ex. 2, attached as **Exhibit B**. Plaintiffs also sent the Termination Notices by Federal Express Overnight. *Id*. at ¶11. The BELOCs specifically allow notice via Zoomeral and Federal Express. Decl. S. Patel, Exs. 1, 2, §14.7 Neither McMann nor Genie ever indicated that the Termination Notices were incomplete or not received. January 16, 2024, Decl. S. Patel, ¶13. To the contrary, David Hughes' text messages and Genie's Zoomeral messages acknowledge receipt of the Termination Notices. Decl. P. Patel, Ex. 2. Moreover, McMann admitted on October 24, 2023, that Plaintiffs' demand for a refund has "complied with each and every term of the BELOCs" Decl. S. Patel, Ex. 4. If there was any further requirement for notice of termination of the BELOCs it was waived by Defendants' and Plaintiffs' reliance on Defendants' directions. McMann's argument is also at odds with its allegation that the BELOCs were assigned to Genie. McMann cannot on the one hand disclaim all liability under the BELOCs because it is no longer a party to the BELOCs but then on the other hand allege defenses based on the terms of the BELOCs. McMann's argument is a hail Mary that falls woefully short and continues the finger pointing and shell game.

 a. **Plaintiffs Will Succeed On Their Claims For Constructive Trust and Unjust Enrichment**

Plaintiffs right to a constructive trust against both Defendants is confirmed by the Responses. A constructive trust is an equitable remedy that is available when "a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it, a constructive trust can be imposed to avoid unjust enrichment." *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶ 76 (internal citation omitted). A constructive trust is appropriate as to McMann because McMann willfully

10

allowed Plaintiffs' ICA Payments to be used to pay McMann's own debts rather than to be held in trust to be used as prepaid interest according to the BELOCs. McMann obtained money and a benefit (through payment of its debt obligations to Genie) to which it was not entitled. The ICA Payments were not McMann's funds to be used to pay McMann's debts. The BELOCs require the ICA Payments to be held in the Interest Reserve Accounts. Decl. S. Patel, Exs. 1, 2, §3.6 The ICA Payments were to be used solely to pay loan interest "until such funds are depleted." Decl. S. Patel, Exs. 1, 2, §3.5. The fact that McMann delegated authority to Genie to hold these funds does not absolve McMann from liability for a constructive trust. Indeed, as McMann admitted in its October 24, 2023 letter, it had not assigned and Genie had not assumed obligations of the BELOC, rather McMann had delegated authority to Genie to "hold said funds in trust." Decl. S. Patel, Ex. 4. McMann is liable for the actions of its designee and it would be wholly inequitable to allow McMann to use money to which McMann had no legal right for personal gain.

A constructive trust is also appropriate as to Genie because Genie admits it received the ICA Payments "in trust" and used them to pay McMann's alleged debt to Genie, rather than hold them in trust to be used for prepaid interest. Genie knew the intended and limited purpose of the ICA Payments because it is familiar with the terms of the BELOCs as it uses identical loan documents for its loan transactions with McMann. D. Hughes Decl. ¶6. Moreover, the wire instructions for the ICA Payments, which Genie drafted, requested Plaintiffs to identify the payment as "ICA." January 16, 2024, Decl. S. Patel, Ex. 1; Ex. 4, Ex. E. Genie knew these funds were not Genie's or McMann's to spend freely. Genie knew these funds were intended as prepaid interest for the two loans. Genie's actions fly in the face of equity and the law. A constructive trust can and should be imposed.

Genie's actions also support Plaintiffs' claim of unjust enrichment. Genie freely admits it took Plaintiffs' ICA Payments and used the money for business expenses. Genie had no right to use the ICA Payments for any purpose other than prepaid interest under the BELOCs. Allowing Genie to benefit from the use of these funds to the detriment of Plaintiffs in a quintessential unjust enrichment scenario. That Genie-McMann may have had a separate loan agreement does not change this outcome. Unbelievably, Genie argues that the ICA Payment "constitutes McMann's payment to Genie." Genie Resp., at 9. This defies logic and the facts of this case. Both the Defendants are aware of the terms of the BELOCs. The ICA Payments were never anything but prepaid interest and neither Genie nor McMann had a unilateral right to use these funds for anything but prepaid interest. Genie's use of these funds for its personal gain is textbook unjust enrichment and should not be countenanced.

b.    **Plaintiffs will Succeed on Their Claims for Fraudulent Transfer.**

Plaintiffs will likely succeed on their claims for fraudulent transfers against both Defendants. The Defendants misapprehend the applicable standards for preliminary relief. Each of the Responses reads more like a dispositive motion than a response to a motion for preliminary relief. Plaintiffs need not prove their case at this stage, they must simply show that there is a 'better than negligible chance of success on the merits.'" *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1096. Plaintiffs have better than a "negligible chance" of success on their fraudulent transfer claims.

As to Genie, the undisputed facts show that Plaintiffs paid the ICA Payments to Genie, Genie received the ICA Payments, Genie transferred and used the ICA Payments for business expenses, and Genie agreed to refund Plaintiffs the ICA Payments no later than October 13, 2023. Decl. S. Patel, ¶22. Genie alleges Plaintiffs are unlikely to succeed because there is no creditor-

debtor relationship, Plaintiffs fail to provide specific details of the transfer, and Plaintiffs fail to show Genie did not receive reasonable equivalent value. Plaintiffs are creditors because they claim a right to payment. The fact that Genie denies liability does not negate Plaintiffs' status as a creditor. In fact, the IUFTA expressly states a claim is "a right to payment, whether or not the right is reduced to judgment,...contingent,…**disputed**, undisputed, **legal**, **equitable**…." 740 ILCS 160/2(c) (emphasis added). Moreover, Genie agreed to refund the money, which gives Plaintiffs a right to payment, among other reasons. Genie is a debtor because it is liable for Plaintiffs' claim. 740 ILCS 160/2(e). Contrary to Genie's argument, there is no requirement in the IUFTA that liability be determined *prior* to filing a lawsuit. Genie Resp., at 5-6. This would simply be illogical. There is also no requirement that Plaintiffs provide every conceivable detail of the transfer as Genie argues is required. On this point, Genie admits it transferred the funds to pay business expenses. That a transfer occurred is undisputed. Finally, Genie did not receive reasonably equivalent value for transferring the ICA Payments. Genie argues it did receive reasonably equivalent value because it has "a contractual right to payment of an amount that is more than sufficient to satisfy its creditors." Genie Resp., at 7. The right to receive payment from an unknown source is not reasonably equivalent value, nor does Genie cite any case law that holds such. That is because the contingent right to receive payment is not an asset Genie received in exchange for the ICA Payment.

Plaintiffs are also likely to succeed on their claims for fraudulent transfer against McMann because McMann engaged in the coordinated effort to transfer the ICA Payments to Genie apparently knowing the funds would not be used for the intended purpose. McMann seeks to avoid liability by arguing the ICA Payments were never in its possession and that McMann never actually made a transfer. This is a classic indirect transfer for which the IUFTA still imposes liability. 740

13

ILCS 160/2(l) (defining "transfer" as "means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset…."). An indirect transfer can occur when the debtor directs a party to pay money due the debtor to another party. *In re FBN Food Servs.*, 175 B.R. 671, 683 (Bankr. N.D. Ill. 1994). The debtor never has possession of the funds, but "for fraudulent transfer purposes, the transaction is treated the same as if the debtor transferred the funds…." *Id.* McMann has simply engaged in an indirect fraudulent transfer.

    c.    **Plaintiffs will Succeed on Their Claims for Breach of Contract.**

Plaintiffs will likely succeed on the breach of contract claim against McMann. McMann's defenses to this claim lack any merit. First, as set forth above, Plaintiffs provided proper notice of termination. McMann admitted in writing that the notice was proper. Decl. S. Patel, Ex. 4. McMann also directed Plaintiffs' to provide notice via Zoomeral. McMann cannot direct Plaintiffs to provide notice in a specific manner and then allege the notice was defective. Second, as set forth above, Plaintiffs did not waive any claims, defenses, or rights in the BELOCs. Finally, McMann has provided no evidence that the BELOCs were assigned to and assumed by Genie. This argument is baseless on its face and should be rejected out of hand.

## CONCLUSION

For the reasons stated above, and for the reasons in the Plaintiffs' opening Motion, Plaintiffs respectfully request that the Court grant their Motion for Temporary Restraining Order and set a hearing for a Preliminary Injunction and provide Plaintiffs with the following relief:

1.    Order Defendants to freeze $3,600,000 and enjoin them from spending, transferring, or otherwise disposing of assets equivalent to the funds provided by Plaintiffs to McMann and Genie;

2.    Order an attachment or other provisional remedy against the Defendants in the amount of $3,600,000 as provided for under the Illinois Uniform Fraudulent Transfer Act;

3. Imposition of a constructive trust against the Defendants in the amount of $3,600,000 and in favor of the Plaintiffs;

4. Granting Plaintiffs access to Defendants' financial books and records to allow for an accounting of the funds Plaintiffs paid to McMann and Genie and an accounting of funds exchanged pursuant to the alleged McMann/Genie BELOC underlying Plaintiffs' BELOC;

5. Set a hearing date on Plaintiffs' request for preliminary injunctive relief, including expedited discovery and production of the following documents by Defendants within seven (7) days of the Court's order: (1) documents sufficient to show all current assets and liabilities of Defendants; (2) documents sufficient to show the receipt, use and tracing of Plaintiffs' ICA Payments; (3) all documents related to loans and contracts between McMann and Genie between January 1, 2023 and October 31, 2023; (4) all correspondence between McMann and Genie related to the white labeling of the loans to Plaintiffs; (5) all correspondence between McMann and Genie related to Plaintiffs; (6) documents sufficient to show the identity of Genie's "capital provider/debtor," the terms of the alleged debt, the initiation and venue for the alleged arbitration and the date of any scheduled arbitration hearing; and (7) documents sufficient to show the identity of all borrowers who have requested refunds from McMann and Genie since January 1, 2023 and the amount of the requested refunds; and

6. Grant Plaintiffs such other and further relief as this Court may deem just and proper.

Dated: January 17, 2024

Respectfully submitted,

NORTH HAVEN LODGING PARTNERS LLC and WALLINGFORD LODGING PARTNERS LLC

William J. McKenna (IL Bar No. 3124753)
Andrew T. McClain (IL Bar No. 6313453)
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, Illinois 60654
Telephone: 312.832.4500
Fax: 312.832.4700
wmckenna@foley.com
amcclain@foley.com

By: _/s/ William J. McKenna_____
        One of Its Attorneys

15

## CERTIFICATE OF SERVICE

I, William J. McKenna, an attorney, hereby certify that on January 17, 2024, I caused a copy of **Plaintiff's Reply in Further Support of Their Motion for Temporary Restraining Order and Injunctive Relief and Hearing on Preliminary Injunction** to be served via ECF on all counsel of records.

/s/ William J. McKenna
William J. McKenna

4857-8290-5245