# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NORTH HAVEN LODGING PARTNERS LLC, a South Dakota limited liability company, and WALLINGFORD LODGING PARTNERS LLC, a South Dakota limited liability company, ) ) ) ) ) ) | |
| Plaintiffs, ) | Case No. 1:23-cv-16264 |
| ) ) | |
| vs. ) | |
| ) ) | |
| MCMANN COMMERCIAL LENDING LLC n/k/a MCMANN PROFESSIONAL SERVICES LLC and/or MCMANN CAPITAL, an Illinois limited liability company, and GENIE INVESTMENTS NV, a Nevada corporation, ) ) ) ) ) ) ) | |
| ) | |
| Defendants. ) ) | |

**PLAINTIFFS' RESPONSE TO GENIE INVESTMENTS NV'S 12(B)(6) MOTION TO DISMISS**

## INTRODUCTION

Genie Investments NV's ("Genie") 12(b)(6) Motion to Dismiss [Dkt. No. 29] ("Motion" or "Mot.") is an improper Rule 12(b)(6) motion that ignores the proper standards in an attempt to avoid its liability to Plaintiffs and prematurely wash its hands of its culpability for Plaintiffs' loss of $3,600,000 at the hands of McMann and Genie.[1] The Motion ignores the actual factual allegations in the Complaint, manufactures facts found nowhere in the Complaint, seeks resolutions of factual disputes, invokes contract interpretations, and seeks to have inferences drawn *against* Plaintiffs rather than in Plaintiffs' *favor*, as required by law.

This Court sits in a unique posture for a motion to dismiss. Typically, motions to dismiss are filed at the outset of a case before the Court has the benefit of a more developed factual background. Here, Plaintiff's Motion for Temporary Restraining Order ("TRO Motion") [Dkt. No. 11] was filed before Genie's Motion, is fully briefed, and the Court has heard two separate rounds of oral arguments on the TRO Motion. The briefs and arguments have further confirmed the Defendants' culpability and the validity of Plaintiffs' claims.[2]

Notwithstanding, the present Motion is a Rule 12(b)(6) motion and the well-established pleading standards apply. Genie utterly fails to meet its burden on a 12(b)(6) motion and makes arguments more akin to a motion for judgment on the pleadings or for summary judgment, none of which are proper here. On a 12(b)(6) motion, the Court should accept all well-pled allegations in the Complaint as true and view the allegations of the Complaint in the light most favorable to

---

[1] Capitalized terms not otherwise defined have the same meaning set forth in Plaintiffs' Complaint.
[2] Plaintiffs are aware of Judge Kness' procedures regarding Motions to Dismiss and filed this response pursuant to the Court's Minute Order (Dkt. No 33) and the discussions before the Court on January 31, 2024, regarding the relationship of these motions to Plaintiffs' pending TRO Motion. Should this Court grant any portion of Genie's Motion, Plaintiffs respectfully request it be without prejudice and with leave to replead any dismissed count. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357-58 (7th Cir. 2015) (Rule 15's liberal standard for amending the pleadings requires a district court "to allow amendment unless there is good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend").

Plaintiffs. Applying the proper standards, Plaintiffs have more than adequately pled each and every count against Genie. The Motion should be denied in full.

## ARGUMENT

**I.       Genie Ignores The Well-Established Standards For Rule 12(B)(6) Motions.**

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a claim, not to resolve the merits of the case. *Intl Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 730 (N.D. Ill. 2018). The Court should accept all well-pled factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Id*. It should consider only the allegations in Plaintiffs' Complaint and the exhibits attached thereto. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002); *North American Elite Ins. Co. v. Menard Inc.*, 491 F. Supp. 3d 333, 338 (N.D. Ill. 2020). Plaintiffs need only state a plausible claim to defeat a motion to dismiss. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). They need not set forth all evidence to support their claims. *Quinones v. Szorc*, 771 F.2d 289, n.3 (7th Cir. 1985). The Court should not attempt to determine whose version of the issues is correct. *Swanson*, 614 F.3d at 404. Rather, "the court will ask itself *could* these things have happened, not did they happen." *Id*. (emphasis in original).

Genie ignores these well-established standards. Genie instead makes a series of unsupported and often disputed arguments of "fact" found nowhere in the Complaint. These include, for example:

- The BELOCs do not restrict the Genie's use of the ICA Payments and anticipate the Lender freely and immediately using the ICA Payments. (Mot., 5, 12)

- Genie did not agree to refund the ICA Payments. (Mot., 7)

- The Complaint does not identify any transfers of the ICA Payments. (Mot., 9)

- Plaintiffs' money did not belong to them before the BELOCs funding. (Mot., 8)

- The BELOCs do not require anyone to hold the ICA Payments in trust. (Mot., 10)

- The BELOCs extended Genie's deadline to refund the ICA Payments. (Mot., 5-6, 11)

These unsupported arguments directly contradict the allegations in the Complaint, which is improper on a 12(b)(6) motion and should be disregarded by the Court. Plaintiffs adequately allege facts to support each and every claim in the Complaint.

## II.     Arbitration Of Plaintiffs' Claims Is Not Required.

Genie continues to double down on its two-faced arguments and finger pointing in an attempt to avoid the fraud perpetrated on Plaintiffs by relying on the BELOCs when convenient for it and disclaiming any association with the BELOCs or McMann when detrimental to its arguments. Genie alleges that "venue is improper" because the BELOCs contain an arbitration clause. (Mot., 3). Genie seeks to avail itself of the arbitration clause under the BELOCs, but *in the very same brief* argues it did not assume any obligation under the BELOCs and is not subject to the BELOCs. *Cf* Mot., 2-3 *with* Mot., 11. Such inconsistent positions should not be tolerated or given any weight and require the resolution of factual issues not proper on a motion to dismiss. Importantly, Genie did not file a *motion to compel* arbitration. Moreover, Genie's co-defendant, who is the actual signatory to the BELOCs, did not move to compel arbitration or even mention arbitration in its own motion to dismiss.

While Genie cannot avail itself of arbitration, dispositive to the issue is the precise language of the BELOCs' arbitration provision which states "This clause shall not preclude Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction." (Compl. Exs. 1, 2, §13.8) Genie ignores this provision. "A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) *quoting Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Plaintiffs have not agreed to arbitrate any claims for provisional remedies, which includes, among

other claims, Counts X and XI—Fraudulent Transfers and XIV—Constructive Trust and Plaintiffs' TRO Motion.

Plaintiffs' TRO Motion, which was filed five weeks before Genie's Motion, is fully briefed and remains subject to this Court's ruling. This Court can—and should—grant the TRO Motion irrespective of Genie's and McMann's motions to dismiss and irrespective of whether this Court ultimately compels arbitration (which it should not), if and when a proper motion to compel is filed. This is because a party "may obtain preliminary injunctive relief in a case, even if the parties have agreed to resolve the dispute in arbitration." *APAC Customer Servs., Inc. v. Marrow*, No. 12 C 2217, 2012 WL 1443091, at *2 (N.D. Ill. Apr. 26, 2012) *citing Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134 (7th Cir. 1994). The arbitration clause is clear—Plaintiffs did not agree to submit their equitable claims to arbitration, and the case law is clear—this Court has authority to issue equitable relief irrespective of the terms of the BELOCs. Genie's half-baked (and procedurally improper) argument regarding arbitration should be disregarded.

**III.     The BELOCs Support Each And Every Claim Against Genie.**

Contrary to Genie's improper 12(b)(6) argument, the BELOCs affirm, rather than negate Plaintiffs' claims. Section C of Genie's Motion should be dismissed entirely as improper under Rule 12(6)(b). Genie manufactures facts found nowhere in the Complaint, seeks to have inferences drawn *against* Plaintiffs, and asks this Court to make legal and factual determinations. This is improper on a Rule 12(b)(6) motion. *Nortek Prod. (Taicang) Ltd. v. FNA Grp., Inc.*, No. 10 C 2813, 2011 WL 2110043, at *4 (N.D. Ill. May 24, 2011); *Swanson*, 614 F.3d at 404. Without actually stating Genie is a party to the BELOCs, Genie seeks to avail itself of the terms of the BELOCs, albeit by misrepresenting the BELOCs' terms. Genie alleges that the terms of the BELOCs allow it to use the ICA Payments however it chooses and that its obligation to refund the

ICA Payments is indefinitely delayed until it resolves an "event of illiquidity." (Mot., 5-6) Genie's argument is flawed for a host of reasons.

First, if Genie is not a party to the BELOCs, it cannot avail itself of the terms of the BELOCs and Genie cites no authority that allows it to make this argument. Nor is this fact alleged anywhere in the Complaint. Second, the actual terms of the BELOCs expressly limit the use of the ICA Payments. The ICA Payments were to be used *solely* to pay interest on the loans or be returned to the Plaintiffs if the loans were not funded. (Compl. Exs. 1, 2, §§3.5, 3.6) The BELOCs required the ICA Payments to be held in the Interest Reserve Accounts and the ICA Payments were to be used solely to pay loan interest "until such funds are depleted." *Id*. at §3.5. Critically, the Plaintiffs' ICA Payment did not become part of the Interest Reserve Account until the first Advance funded. "Upon the funding of the first Advance under the Tranche Schedule, the ICA shall remain part of the Interest Reserve Account and subject to the provisions of this Agreement …." *Id*. at §3.6. The ICA Payments were not available for use or application to interest until the first Advance was made, which never occurred; the funds remained Plaintiffs' lawful property at all times. No other use is specified and Genie cannot point to a specific provision that authorizes any other use. Third, Section 13.7(c) of the BELOCs does not apply to the *return* of the ICA Payments. Section 13.7(c) states "Lender [McMann] shall not be liable or response to the Borrower [Plaintiffs]…for any failure or delay ***in funding the Advances*** *according to this Agreement*…." (Compl. Exs. 1, 2, §13.7(c) (emphasis added)) Section 13.7(c) applies solely to the ***funding*** of the Advances. Advances is defined as "any loan advance made by Lender." (Compl. Exs. 1, 2, §1.1). The refund of the ICA Payments is neither funding nor an Advance. This provision is wholly inapplicable. Moreover, Genie must concede it is the Lender under the BELOCs to avail itself of this provision, which is not alleged in the Complaint and which Genie

5

4876-0929-6804

specifically disclaims in its Motion. This is an issue to be resolved after written and oral discovery, not on a 12(b)(6) motion, if ever.

IV. **Plaintiffs Properly Pled A Claim For Breach of Contract (Count VIII).**

Plaintiffs have properly pled a breach of contract claim against Genie due to Genie's failure to refund the ICA Payments. Genie ignores the factual allegations that support Plaintiffs' claims. Specifically, Plaintiffs allege:

- Genie knew and understood the terms of the BELOCs. (Compl. 80, 195)

- Genie knew of its duties to, and agreed to, hold the ICA Payments in trust. (Compl. 198)

- The ICA Payments were directed to be made to Genie. (Compl. 81)

- Genie received the ICA Payments. (Compl. 197)

- Plaintiffs demanded return of the ICA Payments from Genie and provided Genie written notice of Plaintiffs' demand. (Compl. 199, 201)

- Genie represented in writing it would return the ICA Payments on October 13, 2023. (Compl. 59)

- Genie's owner and officer, David Hughes, confirmed in writing there was "nothing" for Plaintiffs to do to receive the ICA Payments by October 13, 2023. (Compl. 60)

- Genie confirmed in writing and orally, most recently on October 17, 2023, that the Plaintiffs were entitled to a refund of the ICA Payments. (Compl. 61)

- Plaintiffs performed their duties under the parties' oral and written agreement, including through payment of the ICA Payments. (Compl. 197, 205)

- Genie breached the parties' agreement by failing to refund the ICA Payments. (Compl. 206)

Genie ignores nearly all of these factual allegations and instead argues that Plaintiffs did not accept Genie's offer. (Mot., 7) In particular, Genie ignores the allegations of the Plaintiffs' request for a refund (Compl. 57) and Genie's written and oral acceptance (by David Hughes) of that request (Compl. 59-61) is itself an offer and acceptance, and must be inferred to be so on this motion.

6

4876-0929-6804

Moreover, Plaintiffs' reliance on Genie's promise to refund the ICA Payments and forgoing immediate enforcement of Genie's promises constitutes valid consideration and led to Plaintiffs' damages. *Dugas-Filippi v. JP Morgan Chase, N.A.*, 66 F. Supp. 3d 1079, 1088 (N.D. Ill. 2014) Plaintiffs allege all elements of a breach of contract claim against Genie.

V. **Plaintiffs Properly Pled A Claim for Conversion (Count IX).**

Plaintiffs state a valid claim for conversion under Illinois law, which requires Plaintiffs to allege that "(1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016).

Plaintiffs allege a right to the ICA Payments under both BELOCs. (Compl. 226) Plaintiffs allege an absolute and unconditional right to the immediate possession of the refund of the ICA Payments. (Compl. 232) Plaintiffs have demanded the return of the ICA Payments. (Compl. 227) Plaintiffs allege Genie exercised unauthorized control, dominion, or ownership of the ICA Payments after promising the refund. (Compl. 222, 229) Genie's sole argument, that Plaintiffs did not have an unconditional right to the ICA Payments, is legally and factually unsupported.

The ICA Payments always belonged to Plaintiffs. The funds belonged to Plaintiffs when paid as prepaid interest because no loan had been funded and no interest had accrued. Neither McMann nor Genie earned the right to any funds until interest began accruing.[3] The funds belonged to Plaintiffs when the loans were not funded because the BELOCs explicitly require a refund of the amounts within 40 days of termination in such a scenario. (Compl. Exs. 1, 2,

---

[3] Plaintiffs' ICA Payment did not become part of the Interest Reserve Account until the first Advance funded. "Upon the funding of the first Advance under the Tranche Schedule, the ICA shall remain part of the Interest Reserve Account and subject to the provisions of this Agreement, … ." (Compl. Exs. 1, 2, §3.6) The ICA Payments were not available for use or application to interest until the first Advance was made; the funds remained Plaintiffs'.

7

§13.7(b)) At no point in time has anyone other than Plaintiffs had a legal right to the ICA Payments.

The case *Wei Quan v. Arcotech Uniexpat, Inc.*, 2018 IL App (1st) 180227 is directly on point. In *Wei Quan*, plaintiff paid money to defendant to secure an internship. *Id*. at ¶4. Defendant failed to secure an internship and plaintiff requested a refund. The parties executed an agreement whereby defendant agreed to refund the money within 120 days of execution of the agreement. *Id*. at ¶5. Defendant failed to refund the money after 120 days and plaintiff sued for, among other claims, conversion. *Id.* at ¶6. The court denied the defendant's motion to dismiss finding that plaintiff adequately pled a claim for conversion finding that "plaintiff had a right of immediate possession of the $6,250 after the 120-day period lapsed and that his right was absolute and unconditional." *Id*. at ¶13. The same facts are present here. The BELOCs require a refund of the ICA Payments within 40 days. (Compl. Exs. 1, 2, §13.7(b)) Neither Genie nor McMann had any right to withhold the refund of the ICA Payments after this period expired. The Plaintiffs had, at all times, including before expiration of the 40 days, an unconditional right to their deposit funds.

Genie's single case citation is inapposite. In *Swervo Ent. Grp., LLC v. Mensch*, No. 16-CV-4692, 2017 WL 1355880 (N.D. Ill. Apr. 13, 2017) plaintiff and defendant were in contract negotiations whereby plaintiff would serve as a concert promoter for one of the defendants. Plaintiff made a deposit to the defendants as a show of good faith to continue contract negotiations. There was no written agreement between the parties at this time and there was no written agreement controlling how the deposit would be handled if negotiations failed. This is glaringly opposite to the current scenario. Here, the parties have a written contract detailing exactly how and when the ICA Payments shall be returned, and Genie has represented orally and in writing that Plaintiffs are entitled to a refund and that Genie *will* refund the ICA Payments. Count IX more than plausibly alleges a claim for conversion.

VI. **Plaintiffs Properly Pled Claim for Fraudulent Transfer (Counts X and XI).**

Genie's sole argument to avoid fraudulent transfer liability is that Plaintiffs "fail[] to identify any specific transfers or conveyances that were fraudulent or for which Genie did not receive reasonably equivalent value." (Mot. 9). This is factually incorrect. Plaintiffs allege that:

- Plaintiffs transferred the ICA Payments to Genie's account at Chase Bank, Account xxxxx8502 on April 10, 2023. (Compl. 23, 36)

- Genie received the ICA Payments. (Compl. 24, 37)

- Genie transferred the ICA Payments from its Chase Bank, Account xxxxx8502. (Compl. 236, 247)

- Genie did not receive reasonably equivalent value or consideration from the transfer of the ICA Payments. (Compl. 239, 246)

- As of October 13, 2023, Genie did not have enough funds to refund the $3,600,000 ICA Payments (Compl. 65-67)

The facts of Genie's transfer are simple and undisputed. Genie had $3,600,000 of Plaintiffs' funds and then it did not. Genie stated on October 13, 2023, that it was working to "compel the capital provider to deliver the funds it owes, so that Genie can, in turn, provide refunds to its borrowers." (Compl. Ex. 5) The inferences that are logically drawn from Genie's statements—and that must be made in Plaintiffs' favor—are that: Genie transferred the funds outside its custody and control; Genie no longer has the ICA Payments; and Genie did not receive, in exchange for the ICA Payment funds that were transferred, reasonably equivalent value (otherwise Genie would have the resources to immediately refund the ICA Payments).

Genie's cited case law does not support dismissal. In *Peterson v. McLean (In re Mack Indus.)*, Nos. 17 B 09308, 19 A 00433, 2019 Bankr. LEXIS 3603, *11 (Bankr. N.D. Ill. Nov. 20, 2019), the trustee simply alleged an amount of money was transferred at some point during a four-year span and the complaint contained "no other information about the transfers." In *In re Life*

9

*Fund 5.1 LLC*, No. 09 B 32672, 2010 WL 2650024, at *1 (Bankr. N.D. Ill. June 30, 2010), the court found the allegation that simply stated "over $2 million" was deposited into an account was deficient for lack of detail, but dismissed the complaint with leave to amend. In *United States v. Park*, No. 16 C 10787, 2017 WL 4417826, at *3 (N.D. Ill. Oct. 5, 2017), the Court held that Plaintiffs' theory of a fraudulent transfer was belied by the express terms of a trust, which provided for a different recipient of the funds at issue than the recipient alleged in the complaint. Plaintiffs Complaint contains more than sufficient information unlike the authority relied upon by Genie. Plaintiffs identify the bank account at issue, who transferred the funds, the short window in which the funds were transferred, that the transferee did not receive reasonably equivalent value, and that the transferee admits to all of this *in writing*.

The purpose of Rule 9(b) is "to give the defendants notice of the claims and to ensure the claims are asserted responsibly." *In re Life Fund 5.1 LLC*, No. 09 B 32672, 2010 WL 2650024, at *4 (Bankr. N.D. Ill. June 30, 2010). A claim is asserted responsibly when the plaintiff conducts a "precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Plaintiffs' Complaint is supported by facts and not the type of undeveloped and unthoughtful complaint susceptible to dismissal on a 12(b)(6) motion. There is nothing defamatory or extortionate about the Complaint—indeed, Genie admits it transferred the ICA Payments and admits it now lacks the financial ability to refund the ICA Payments. (Compl. Ex. 5) Moreover, Rule 9(b)'s pleading requirements "may be relaxed when the details are within the defendant's exclusive knowledge." *Zions First Nat. Bank v. Paul Green*, No. 07-C-3760, 2007 WL 4109125, at *2 (N.D. Ill. Nov. 16, 2007) (internal citation omitted). Genie's actions are a quintessential fraudulent transfer and are properly pled.

**VII.       Plaintiffs Properly Pled A Claim For Fraud And Fraudulent Misrepresentation (Count XII).**

Consistent with Genie's strategy of relying on the BELOCs when it suits its defense and disclaiming any obligation under the BELOCs when the terms impose liability, Genie's sole defense against Plaintiffs' claim for fraud and fraudulent misrepresentation is that the BELOCs allowed Genie to spend the ICA Payments as it sees fit. (Mot., 10-11) Genie relies on facts found nowhere in the Complaint and asserts facts that are contrary to the terms of the BELOCs. Genie unbelievably argues that the Genie's rights to use the ICA Payments "is completely unrestricted." (Mot., 11) This allegation is found nowhere in the Complaint and contradicted by the plain terms of the BELOCs. Moreover, Genie's argument ignores the well-pled and knowingly false misrepresentations made both orally and in writing by Genie and David Hughes regarding Genie's false promise to refund Plaintiffs' ICA Payments and that Genie has never not made a requested refund.[4] (Compl. 58-62.)

First, the BELOCs *require a refund* of the ICA Payments. (Compl. Exs. 1,2 §13.7(b)) A party cannot have "unrestricted" use of money when it is obligated to refund that money and the

---

[4] The depth of Genie's scheme and the fraud perpetrated against Plaintiffs (and others) has just recently become clearer. The identify of Genie's "capital provider" is now known, and the capital provider is not a true capital provider in any sense of the term in the banking/lending world nor a typical wholesale lender. What has now come to light by ***Genie's admission*** in a lawsuit filed in District Court in Florida on February 6, 2024, is that when Genie was representing it could fund loan commitments throughout 2023, accepting deposits of ICA Payments for those commitments, and later promising refunds of ICA Payments, it was doing so knowing that it could not currently honor those obligations because it didn't have a "capital provider." Plaintiffs request that the Court take judicial notice of Genie's Complaint, attached as **Exhibit A.** *See* Ex. A at ¶¶ 47 & 49. Genie now claims ***it*** was the victim of fraud in late-2022 after being lulled into an apparent get-rich-quick scheme promising to turn $9 million into $75 million in just 60 days. *Id*. at ¶ ¶3 & 4. Setting aside the absurdity of this too-good-to-be-true offer, Genie blames this fraud, rather than its own fraudulent misrepresentation to Plaintiffs (and others) after it discovered it by continuing its lending scheme, for "an avalanche of terminations, refund requests, demand letters, disparaging public statements, and legal actions against Genie." *Id*. at ¶ 49. It is now clear Genie never had the money it purportedly was going to loan, nor the money it promised to refund. To the extent, the Court finds any defects in Plaintiffs' allegations regarding Genie's fraudulent conduct and misrepresentations in the Complaint—Plaintiffs assert they are sufficiently pled—Genie's admissions provide a basis for leave to amend the Complaint and granting Plaintiffs' request for a preliminary injunction.

11

money is not earned. This fact alone sinks Genie's defense. Second, the ICA Payments were to be used *solely* to pay interest on the loans or be returned to the Plaintiffs. (*Id*, §§ 3.5, 3.6)) The BELOCs required the ICA Payments to be held in the Interest Reserve Accounts and the ICA Payments were to be used solely to pay loan interest "until such funds are depleted." *Id*. The phrase "until such funds are depleted" contemplates that funds are held in an account and the balance decreases as funds are withdrawn to paydown the interest. The Plaintiffs' ICA Payment did not become part of the Interest Reserve Account until the first Advance funded. "Upon the funding of the first Advance under the Tranche Schedule, the ICA shall remain part of the Interest Reserve Account and subject to the provisions of this Agreement…." (*Id*, § 3.6) The ICA Payments were not available for use or application to interest until the first Advance was made, which never happened; the funds remained Plaintiffs' lawful property. Genie's possession of the funds was *restricted* until the funds were properly payable as interest, which never occurred.

Genie dedicates a single sentence to challenge Plaintiffs' factual allegations in the Complaint arguing Plaintiffs do not sufficiently allege reliance on Genie's representations. (Mot., 11). This is incorrect. Plaintiffs' reliance on the representations that Genie incorporated into the BELOCs provided to McMann, among other representations, hold the ICA Payments in trust, properly apply the ICA Payments, and refund the ICA Payments when requested, is evidenced by the simple fact that Plaintiffs wired the ICA Payments to Genie at McMann's direction. (Compl. 22, 35) If Plaintiffs did not believe and rely on the representations, they never would have wired the funds. Regrettably, Plaintiffs did rely on Genie's representations, and now have suffered grave damage as a result. Moreover, Plaintiffs allege reliance on the false promises of refunds by Genie and David Hughes's representation that Genie had never not refunded an ICA Payment. (Compl. 63). These allegations are not addressed in Genie's Motion.

12

**VIII.      Plaintiffs Properly Pled A Claim Beach of Fiduciary Duty (Count XIII).**

Plaintiffs properly allege a breach of fiduciary duty claim against Genie, which was created when Genie became the holder of the ICA Payments at the direction of McMann. Genie owed a fiduciary duty to Plaintiffs to, among other duties, hold those funds in trusts to be used only pursuant to the BELOCs (Compl. 81, 84, 266), and refund the ICA Payments if the loans went unfunded. (Compl. 81, 84, 89, 266) Genie breached its duties by, among other breaches, failing to safeguard and hold the ICA Payments in trust, failing to apply the ICA Payments pursuant to the BELOCs, and failing to refund the ICA Payments. (Compl. 90, 274)

A lender owes fiduciary duties to a borrower when the lender is to hold and apply borrower funds pursuant to the parties' agreement. In *Ploog v. Homeside Lending, Inc.*, 209 F.Supp.2d 863 (N.D. Ill. 2002), this Court denied a lender's 12(b)(6) motion to dismiss a claim for breach of fiduciary duty. In *Ploog*, the lender collected tax escrows from the borrower and mismanaged those funds by paying the incorrect property taxes. *Id*. at 866. This Court held that the lender owed the borrower a fiduciary duty in connection with the escrow funds and mismanagement of the funds would constitute a breach of fiduciary duty. *Id*. at 875. The same logic applies here. Genie held Plaintiffs' ICA Payments and Plaintiffs trusted that Genie would safeguard and apply those funds to interest on the loan, if and when the loan was funded, or refund those payments if the loan was terminated and never funded. Genie failed to act accordingly and violated its duties to Plaintiffs.

Similar to its defense against fraud and fraudulent misrepresentation, Genie seeks to avoid liability for its breach of fiduciary duty because Genie alleges the BELOCs allowed it "unrestricted" use of the funds received as ICA Payments. As set forth above in Section VII, this is legal and factually wrong and not a proper 12(b)(6) argument.

13

### IX. Plaintiffs Properly Pled A Claim For Constructive Trust (Count XIV).

Genie does not contest Plaintiffs' factual allegations supporting a constructive trust claim. Instead, Genie seeks dismissal because a constructive trust is not an independent cause of action. (Mot., 13). This undeveloped argument does not support dismissal of Plaintiffs' request for a constructive trust particularly because Plaintiffs claim is factually supported.

Plaintiffs properly pled a claim against Genie for a constructive trust. A constructive trust is an equitable remedy that is available when "a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it, a constructive trust can be imposed to avoid unjust enrichment." *National Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶ 76 (internal citation omitted). Plaintiffs allege that Genie received the ICA Payments (Compl. 24, 37), the ICA Payments could only be used to pay interest on the Loans or be returned to Plaintiffs (Compl. 69), and Genie has retained the funds by failing to return them to Plaintiffs. (Compl. 90, 299) Genie had no right to retain the ICA Payments and has no right to refuse to refund the ICA Payments. Genie's actions fly in the face of equity and good conscience, especially in light of the misrepresentation made by Genie and David Hughes and its breaches of fiduciary duties. A request for a constructive trust has been properly pled and Genie does not contest Plaintiffs' allegations.[5]

### X. Plaintiffs Properly Pled A Claim For Unjust Enrichment (Count XV).

Like Plaintiffs' claim for a constructive trust, Genie's egregious actions and equity support a claim of unjust enrichment. "Unjust enrichment is a remedy that lies where a defendant has unjustly retained a benefit to the plaintiff's detriment and...the defendant's retention of the benefit

---

[5] To the extent the Court grants dismissal of Count XIV, Plaintiffs request leave to replead constructive trust as a remedy to Genie's misconduct and breaches as set forth in other counts of the Complaint.

violates the fundamental principles of justice, equity, and good conscience." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (internal citation omitted).

Genie's actions are egregious and violate the fundamental principles of justice, equity, and good conscience. As alleged in the Complaint, Plaintiffs were induced into wiring Genie the ICA Payments, Genie received the ICA Payments, Genie misappropriated the ICA Payments, Genie promised to fund the ICA Payments, Genie refused to refund the ICA Payments, and Genie has made materially false representations regarding its ability to and timing of refunding the ICA Payments. (Compl. 59-61, 63, 79-83, 89) Most importantly, the ICA Payments **are Plaintiffs' funds**, **not Genie's.** As set forth above, Genie had no right to freely spend Plaintiffs' ICA Payments. Allowing Genie to get away with this scheme would be inequitable and unjust.

Genie's sole defense against unjust enrichment is that Plaintiffs' improperly incorporated allegations of an express contract. (Mot., 14) Yet, Genie's Motion ignores the extra-contractual fraudulent misrepresentations from Genie and David Hughes to Plaintiffs regarding the refunds that establish the inequity of Plaintiffs possession of Plaintiffs' $3,600,000. Moreover, at this stage of the litigation, Fed. R. Civ. Pro. Rule 8(d)(2)-(3) make clear that Plaintiffs is allowed to plead alternative, yet plausible claims for relief. *See Sandee's Catering v. Agri Stats, Inc.*, No. 20 C 2295, 2021 WL 963812, at *7 (N.D. Ill. Mar. 15, 2021) (collecting cases). Therefore, Count XV survives Genie's Motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny McMann's Motion in its entirety. Should the Court decide to grant any part of the Motion, Plaintiffs request leave to amend their Complaint.

15

| | |
|---|---|
| Dated: February 12, 2024 | Respectfully submitted, |
| | NORTH HAVEN LODGING PARTNERS LLC and WALLINGFORD LODGING PARTNERS LLC |
| William J. McKenna (IL Bar No. 3124753)<br>Andrew T. McClain (IL Bar No. 6313453)<br>Foley & Lardner LLP<br>321 North Clark Street, Suite 3000<br>Chicago, Illinois 60654<br>Telephone:  312.832.4500<br>Fax:  312.832.4700<br>wmckenna@foley.com<br>amcclain@foley.com | By:   /s/ *William J. McKenna*<br>      One of Its Attorneys |

**CERTIFICATE OF SERVICE**

I, William J. McKenna, an attorney, hereby certify that on February 12, 2024, I caused a copy of ***Plaintiffs' Response To Genie Investments NV's 12(b)(6) Motion to Dismiss*** to be served via ECF on all counsel of records.

      /s/ William J. McKenna
      William J. McKenna

4876-0929-6804