IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTH HAVEN LODGING PARTNERS LLC, a South Dakota limited liability company, and WALLINGFORD LODGING PARTNERS LLC, a South Dakota limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> MCMANN COMMERCIAL LENDING, LLC n/k/a MCMANN PROFESSIONAL SERVICES LLC and/or MCMANN CAPITAL, an Illinois limited liability company, and GENIE INVESTMENTS NV, a Nevada corporation, <br><br> Defendants. | Case No. 1:23-cv-16264. |

**MCMANN COMMERCIAL LENDING LLC'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO 12(b)(6)**

McMann Commercial Lending LLC (McMann), through undersigned counsel, states as follows for its reply in support of its Motion to Dismiss Pursuant to 12(b)(6):

**INTRODUCTION**

Plaintiffs claim that McMann responded to allegations outside of the Complaint because it cited exhibits in Plaintiffs' Complaint. But, in fact, it is the Plaintiffs throughout their Response[1] that continuously rely on facts not pled in their own Complaint. To save their claim for conversion, Plaintiffs' arguments rely on a previously unpled allegation: that Genie acted as McMann's agent. Resp. at 7. To side-step Illinois' prohibition on promissory fraud, Plaintiffs now allege an unpled scheme to defraud. Resp. at 4. Plaintiffs also stretch application of Illinois law. For instance,

---

[1] "Response" or "Resp." refer to Plaintiffs' Response to McMann Commercial Lending LLC's 12(b)(6) Motion to Dismiss.

1

Plaintiffs attempt to change the possession element to one of causation as to their claims for constructive trust and fraudulent transfer. Overall, Plaintiffs' Response only serves to illuminate the deficiencies in their own Complaint. Each of Plaintiffs' arguments fail, and every count in the Complaint should be dismissed, and most, if not all, with prejudice.

## ARGUMENT

**I.      McMann's Motion to Dismiss relies on the exhibits to the complaint.**

It is well-established that the Court can review exhibits at the motion to dismiss stage. *See e.g. Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). "When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with [the Court's] obligation to review all facts in the light most favorable to the non-moving party." *Id*. When an exhibit "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Id*. By attaching the exhibits to their complaint, Plaintiffs plead themselves out of the case. To avoid the consequences of their pleadings, Plaintiffs pretend that the exhibits attached to their Complaint simply do not exist. Resp. at 2-3.

| **What Plaintiffs claim cannot be found in the Complaint:** | **Where it *can* be found in the Complaint:** |
|---|---|
| "McMann was not required to hold the ICA Payments in trust or account at all for the ICA Payments. (Mot., 2, 7)" | The BELOCs establish the rights and obligations between the parties, and they do ***not*** require the ICA Payments[2] to be held in Trust [Recital D to the BELOCs.[3]] |
| "Plaintiffs understood that Genie, not McMann, would process refunds. (Mot., 2)" | Plaintiffs attach correspondence between them and Genie in Exhibit E regarding Genie's refund of the loans and its taking responsibility |

---

[2]      ICA Payments means $1.8 million dollar payments made in Recital D of the BELOCs, as that term is defined below.
[3]      Business Expansion Line of Credit ("BELOC"). Complaint Exhibits 1 and 2, the BELOCs, found at Dkt. Nos. 1-2 and 1-3, are collectively referred to herein as "BELOC's" with reference to the section numbers within.

2

|  | for all aspects of refunding the sought after ICA Payments. [Doc 1-6, #242-43.] |
|---|---|
| "Plaintiffs thought of Genie as its loan servicer and themselves as Genie's client. (Mot., 2)" | Plaintiffs literally refer to the relationship between them and Genie as "Genie and Client." *See Id*. |
| "McMann has worked diligently with Genie to provide a refund for Plaintiffs. (Mot., 2)" | McMann's demand for Genie's return of the funds is attached as an exhibit to the Complaint. *See* [Dkt. No. 1-5]. |
| "Plaintiffs failed to provide adequate notice of termination of the BELOCs. (Mot., 4, 13-14)" | Plaintiffs provided notice via the Zoomeral messaging system [Comp.,[4] at ¶59] and ***not*** via certified mail as required by BELOCs §13.7(a). |

I. **Plaintiffs' conversion claim fails because they do not allege that McMann wrongfully assumed control, dominion, or ownership of the ICA Payment.**

Plaintiffs also claim that Defendants move to dismiss the claims of conversion on the ground that "McMann did not cause a transfer of the ICA Payments.' (Mot., 9-10)." This is not what Defendants argue and it is in fact so disingenuous that it needs more than a box to explain. Plaintiffs cannot meet their burden to plead conversion because they fail to plead possession, ownership, or control by McMann. Instead, Plaintiffs attempt to reframe conversion claims replacing the requirement of possession and control with simply a new element of causation.

Under Illinois law, causation is not an element; wrongful assumption of control is. *See, e.g., Stathis v. Gelderrnann. Inc.*, 295 Ill. App. 3d 844, 856 (1st Dist. 1998) (Conversion requires "Defendant's unauthorized and wrongful assumption of control, dominion or ownership over the property."); see also *Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 282 Ill. App. 3d 1052, 1057 (1st Dist. 1996).

According to the Complaint, McMann never had the funds. This is aptly supported by the facts pled including: 1) Plaintiffs wired money to a Genie bank account; [Comp., ¶ 35, 36]; 2)

---

[4] "Comp." refers to the Complaint.

3

Plaintiffs received confirmation that Genie received the payment *Id*. at ¶37; 3) Plaintiffs messaged Genie to refund the ICA payment [Dkt. 1-6 at 242, 243]; 4) correspondence from McMann's counsel demanding that Genie refund the ICA Payment [Dkt. 1-5 at 162-64]; 4) correspondence from Genie's counsel claiming an inability to return the funds [Dkt. 1-6 at 24]; and 5) "Genie admitted that it no longer has the ICA Payment in its possession or control. [Comp. at ¶67]. At no point in the Complaint do Plaintiffs allege that McMann actually received the ICA Payment.[5]

Rather than refute this argument, Plaintiffs refute an argument that is not asserted in Defendant's motion—that claims for conversion of money require funds to be specifically earmarked. They do not. *In re Thebus*, 108 Ill. 2d 255, 260 (1985). But these claims require that the funds be identified. *Id*. All funds that Plaintiffs identify are not alleged to be held or controlled by McMann, and accordingly, the conversion claim should be dismissed with prejudice for failure to state a claim.

Additionally, the BELOCs contain a provision for the return of the ICA Payment. BELOCs, §13.7. Plaintiffs claim for conversion is nothing more than a claim for the return of the ICA payment. There being the same operative facts and same damages, Plaintiffs' conversion count is duplicative of their breach of contract count and should be dismissed. *Freedom Mortg. Corp. v. Burnham Mortg., Inc*., 720 F. Supp. 2d 978, 992 (N.D. Ill. 2010)

---

[5] Plaintiffs' Response to Genie confirms that it was Genie—and not McMann - who has (or had) the ICA Payments. "What has now come to light by Genie's admission in a lawsuit filed in District Court in Florida on February 6, 2024, is that when Genie was representing it could fund loan commitments throughout 2023, **accepting deposits of ICA Payments for those commitments**, and later promising refunds of ICA Payments, it was doing so knowing that it could not currently honor those obligations because it didn't have a "capital provider.' . . . Plaintiffs' Response to Genie Investments NV's 12(b)(6) Motion to Dismiss (Emphasis added). [Dkt. No. 35 at 757.]

II. **Plaintiffs' claims for fraud lack the required specificity and are barred by the rule against promissory fraud.**

Plaintiffs do not dispute heightened pleading requirements for claims sounding in fraud—that they must plead who said what and when they said it. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). Defendants must also plead reliance and damages. *See, e.g., Castlerigg Master Invs., Ltd. v. AbbVie, Inc.*, 2021 IL App (1st) 200527, ¶ 20, 191 N.E.3d 121, 126. Plaintiffs do not plead any damages related to the promise to repay or explain in any way how they acted in reliance on these promises. See Comp. at 152-54. Yet, Defendants' promises to repay over five months after entering into the agreement are the only communications satisfying the heightened burden to plead what was said, who said it, and when it was said. Accordingly, there can be no fraudulent inducement based on these statements. Moreover, the communications that Plaintiffs supposedly relied upon and are damaged by—for the purposes of fraud, the communications that matter—are absent, pled in conclusory fashion, and as a result, not pled with any, let alone the requisite, specificity.

**Fraudulent Allegations That Relate to Reliance and Damages**

| What is pled in the Complaint: | What is missing from the Complaint: |
|---|---|
| "McMann would fund the loan in accordance with the BELOCs. (Compl., 20)" | Who said what, what was said, and when it was said; also contradicted by §14.1 of the BELOCs which clearly address potential delays or failures by McMann's wholesale lender (Genie) |
| "McMann had the ability to fund the loan at the time of entering the BELOCs. (Compl., 43, 147)" | Same. |
| "McMann would hold and apply the ICA Payments pursuant to the BELOCs. (Compl., 147)" | Same; also contradicted by the obligations governing the ICA Payments contained in the BELOCs (only a credit on books and records). |

Notably, each of these claims are simply future promises to act in accordance with the BELOCs. While actions that are a part of an overall scheme are excepted from Illinois' prohibition on promissory fraud, Plaintiffs do not plead that these claims are a part of a scheme or artifice. Nor are there any allegations, such as repeated misrepresentations, that would suggest that representations made were a part of an overall scheme or artifice. *See Jada Toys, Inc. v. Chicago Import, Inc.*, Case No. 07 C 699, 4 (N.D. Ill. Apr. 10, 2008). Plaintiffs first use the term, and allege the existence of, a "scheme" in their Response.

Because future promises are easy to plead and difficult to disprove, a plaintiff's burden to plead a fraud based on future promises is particularly high. *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)[6]. "In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent — a scheme or device. " *Id*. Plaintiffs do not plead any such facts on which a Court could infer such an exception to Illinois' prohibition on promissory fraud. Moreover, the Complaint contains absolutely no factual allegations supporting the existence of any bad faith or intent to deceive by McMann. For these reasons, Count V must be dismissed with prejudice.

Precisely because this is a promissory fraud for the same terms that are in the contract, it is entirely duplicative of its breach of contract count. Plaintiffs do not address how the fraud claims differ from their breach of contract claims, because they cannot. There being no ambiguities in the BELOCs, Plaintiffs are stuck with the terms in the Agreement. *Air Safety, Inc. v. Tchrs. Realty Corp.*, 185 Ill. 2d 457, 464, 706 N.E.2d 882, 884 (1999) (describing the four-corner rule). When there is an integration clause, the parties are obligated to perform according to the promises contained within the contract, not the promises that led to the contract. *Id*. at 885. Although

---

[6] Plaintiffs also rely on *Bower* for Illinois law on promissory fraud. *See* Resp. at 4.

Plaintiffs' Complaint lacks the specifics, all that these promises appear to be are the same promises to perform contained in, or subsumed by, the BELOCs. This is particularly important in this case, because the BELOCs contemplate the exact circumstances that Plaintiffs rely on: delays and failures caused by McMann's wholesale lender.

In determining whether a claim is duplicative, the issue is whether the claims are based on the same operative facts and result in the same injury. *Freedom Mortg. Corp.* 720 F. Supp. 2d at 992 (citing *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 796 (N.D. Ill. 2010). Because there is an integration clause, these are necessarily the same operative facts (promises to perform according to the BELOCs). Comp. at 147-152. And Plaintiffs state the same injury ($3.6 million). Comp., ¶154. Therefore, on this additional basis, the Court should dismiss Plaintiffs' claims for Fraud and Fraudulent Misrepresentation (Count V) with prejudice.

### III. Plaintiffs' claims for constructive fraud, conversion, and fraudulent concealment each fail because they cannot show possession, control, or dominion of the funds.

Plaintiffs attempt to resuscitate Counts II, III, IV and VII in a few different ways. First, in their briefs, Plaintiffs make claims of possession through *agency* despite making absolutely no allegations of agency in the Complaint, and claim the possession element is satisfied by McMann being in control of the Plaintiffs themselves. Second, Plaintiffs treat both transfers as if they were one and claim that McMann has a right to control the funds in Genie's bank account despite failing to plead dominion or control over the bank account. And third, Plaintiffs focus on causation, rather than possession, in defending their claims for fraudulent transfer. Each of these arguments fail.

### A. Plaintiffs' conversion claim (Count II) fails because Plaintiffs do not plead that Genie or themselves acted as McMann's agent.

To get around the fact that they do not plead possession, Plaintiffs fabricate an agency argument in their Response and claim that Genie was acting as McMann's agent. Resp. at 8. The

7

problem with the Plaintiffs' agency argument is that there is absolutely nothing in the Complaint that supports it. There are no allegations in the Complaint that suggest that McMann had the right to control the agent's conduct, or that Genie had the power to act on McMann's behalf as required to support a claim of agency. *McNerney v. Allamuradov*, 2017 IL App (1st) 153515, ¶ 64. There are no allegations that support the type of agency it was (actual, implied, or apparent) or the scope of that agency. No allegations that Genie acted on behalf of McMann. ***Nothing***. The best that Plaintiffs can do is cite a letter that McMann wrote demanding that Genie stop contacting its clients and provide a refund for Plaintiff. Resp. at 8.[7] The fact that Genie did not provide a refund in response to the letter suggests McMann's lack of control over its purported agent.

Regardless, while questions of agency are typically a matter of fact, Plaintiffs must at the very least plead the elements of agency, and state facts that show how agency works in this case. *Thakkar v. Ocwen Loan Servicing, LLC,* No. 15-CV-10109, 2017 WL 3895596, at *7 (N.D. Ill. Sept. 6, 2017). There being no agency allegations whatsoever, this case is distinguished from *Thakkar*, the only case plaintiff cites in support of its agency argument.

Plaintiffs also argue that McMann was in control of the ICA Payment by directing Plaintiffs to pay Genie. But at that point, Plaintiffs had control over their own funds; McMann did not. Plaintiffs were not agents that were under the control of the principal. This is easily distinguished from the cases that Plaintiffs cite. In *Jensen*, a landlord sold chattel on its property—it did not direct the tenant to sell its own property. *Jensen v. Chicago Western Indiana R.R. Co.*, 94 Ill. App. 3d 915, 919 (Ill. App. Ct. 1981). And in *Groot Indus., Inc. v. Cordell*, was about an employee who stole funds from its employer. " *Groot Indus., Inc. v. Cordell*, No. 08 C 4907, 2009 WL 3852455, at *3-6 (N.D. Ill. Nov. 17, 2009). Imagine if Plaintiffs arguments accurately reflected Illinois law:

---

[7] Plaintiffs also reference "directing payments to Genie" but this is misleading. Resp. at 8. McMann directed Plaintiffs to pay Genie. This does not suggest that McMann controlled Genie.

if McMann "directed" Plaintiffs to sell their cars, that too could be a claim for conversion. It does not reflect Illinois law and therefore Plaintiffs claim for conversion must be dismissed with prejudice.

### B. Plaintiffs' claims for fraudulent transfer (Count III, IV) must fail because Plaintiffs do not allege facts that suggest that McMann had control over the transfers away from Genie's bank account.

There are two transfers in this case: the transfer from Plaintiffs to Genie and some unspecified transfer(s) away from Genie. [Comp. at ¶131, 32.] McMann cannot be liable for fraudulent transfers for funds that Plaintiffs transferred directly to Genie. That would not make any sense, as it would not constitute a transfer away from the debtor to the detriment of a creditor, but rather a transfer from the creditor themselves. At the time of that transaction, Plaintiffs would not be "creditors"[8] that have a "claim"[9] and McMann and Genie would not be "debtors"[10]. If Genie provided the line of credit or the refund when requested, the parties would not be in court right now. Genie and McMann would not have any liability for a claim until they could not perform pursuant to the BELOCs or provide a refund upon request. Because it is the *creditor* transferring its own assets, and not a debtor, it is not a claim of the "classic indirect fraudulent transfer" in which someone at the direction of a *debtor* makes a payment to a third party. In re FBN.[11] As it

---

[8] "Creditor" means a person who has a claim, including a claim for past-due child support. 740 ILCS 160/2(f).
[9] "Claim" means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. *Id*. at 160/2(c).
[10] "Debtor" means a person who is liable on a claim. *Id*. at 160/2(f).
[11] Plaintiffs only cite one case in their response regarding indirect transfers. Resp. at 8. That case is *In re FBN Food Serv., Inc.*, 175 B.R. 671, 686 (Bankr. N.D. Ill. 1994), aff'd sub nom. *In re FBN Food Servs., Inc.*, 185 B.R. 265 (N.D. Ill. 1995), aff'd and remanded sub nom. *Matter of FBN Food Servs., Inc.*, 82 F.3d 1387 (7th Cir. 1996). This is referred to as "*In re FBN.*" *In re FBN* determines transferors and tranferees for the purpose of avoiding transfers under the U.S. Bankruptcy code. *Id*. Defendants have not found any similar cases on indirect transfers under the Illinois Fraudulent Transfer Act. However, it appears that Section 548 and the Illinois UFTA are analogous for the purpose of determining liability for transfers. *In re Jumer's Castle Lodge, Inc.*, 329 B.R. 837, 843 (Bankr. C.D. Ill. 2005), aff'd, 338 B.R. 344 (C.D. Ill. 2006), aff'd sub nom. *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943 (7th Cir. 2007); *see also In re Zeigler*, 320 B.R. 362, 372 (Bankr. N.D. Ill. 2005).

pertains to this transfer, Counts III and IV for actual and constructive fraud must be dismissed with prejudice.

Then there is the transfer away from Genie. There are no specific allegations as required to meet the heightened pleading standard for fraudulent transfers. *Rubbermaid Inc. v. Robert Bosch Tool Corp.*, No. CIV. 09-1395, 2010 WL 3834410, at *3 (C.D. Ill. Sept. 23, 2010). There are no allegations at all regarding the transfers: to whom it was transferred to; the date of those transfers; the value received; or any of the "badges of fraud" identified in 740 ILCS 160/5. For that reason alone these claims should be dismissed with prejudice.

Nonetheless, for a claim of a debtor's indirect transfer to apply here, Plaintiffs would need to allege that McMann had "dominion over the money or other asset, the right to put the money to one's own purpose."[12] Plaintiffs do not make this allegation in the Complaint. That is what separates this case from *In re FBN*, where the indirect transferee was acting as the agent for the debtor, or from Virginia Nat. Bank where bank overdraft fees the debtor's sister paid could be clawed back as an indirect transfer. *In re FBN*; see also *Nat. Bank v. Woodson,* 329 F.2d 836 (4th Cir.1964). Without the allegation of control over the funds, McMann cannot be liable under the Uniform Fraudulent Transfer Act. Thus, Counts III and IV must be dismissed with prejudice.

### C. Plantiffs' claim for constructive trust (Count VII) fails because Plaintiffs do not allege possession of the property that is subject to the trust.

"A constructive trust is a device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." *Sadacca v. Monhart*, 128 Ill. App. 3d 250, 255 (Ill. App. Ct. 1984) Every case Plaintiffs cite recognizes this principle. *See National Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶ 76 ("A

---

12     *In re FBN* at 686.

constructive trust is created when a court declares the party in possession of wrongfully acquired property the constructive trustee of that property because it would be inequitable for that party to retain possession of it.") *see also People ex Rel. Daley v. Warren Motors*, 136 Ill. App. 3d 505, 510 (Ill. App. Ct. 1985) ("The purpose of a constructive trust is to compel the party unfairly holding the money or property to convey it to whom it justly belongs.") Plaintiffs avoid this fundamental principle because it defeats their argument.

Since Plaintiffs cannot meet the possession element of a constructive trust, they instead argue a causation element which Illinois courts do not accept. Resp. at 9 ("A constructive trust is appropriate against McMann because McMann caused the improper transfer. . .") But the cases Plaintiffs cite say the opposite. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa, v. DiMucci*, No. 1-12-2725, 17 (Ill. App. Ct. 2015) ("A constructive trust may be imposed in the case of mistake, although no wrongdoing is involved.")

*Sadacca*, which Plaintiffs rely on, is illustrative. Through forgery, the husband was in possession of the money which was later transferred to the widow after the husband's death. *Sadacca*, 128 Ill. App. 3d at 256 (Ill. App. Ct. 1984). The the issue was whether the Court could apply a trust over specific funds that a widow obtained as a result of her late-husband's forgery. *Id*. The court found that it did not matter that the widow did not cause any wrongdoing; it only mattered that she was in possession of the wrongfully gotten funds. *Id*. at 257.

While McMann denies any fraudulent conduct (and the Complaint contains no factual allegations of fraudulent intent against McMann), if one were to apply *Sadacca* to the facts of this case, Genie would be the widow since Genie was in possession of the funds—not McMann. And it would be Genie who would have a constructive trust applied over its assets—not McMann. To make this case clearer, say that Plaintiffs provided a Ferrari rather than cash for its ICA Payment,

11

and gave possession of that Ferrari to Genie. This case would then be about imposing a trust over the Ferrari *in Genie's possession*. It would not make sense for Plaintiffs to pursue McMann under a theory of constructive trust for the equivalent value of the Ferrari.

The only way that it could pursue McMann is if Genie transferred that Ferrari to McMann, or if the proceeds of the sale of the Ferrari could be traced to McMann. The tracing requirement is not a mere accounting procedure, but it is fundamental to determining what property could be subject to the trust. *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 307 (7th Cir. 2014). It only looks like an accounting procedure for damages when a court has to sort through multiple sources of income to determine the actual proceeds of unjust enrichment. *See Sadacca*, 128 Ill. App. 3rd at 258. In their Response and in their Complaint, Plaintiffs continue to assert claims of general liability by claiming that McMann caused damages and therefore its assets should be subject to a constructive trust. Resp at 11. But constructive trust claims are not about causation, as *Sadacca* shows; they are about determining *possession* and the scope of property that would be subject to the trust.

Plaintiffs having identified no property that would be subject to the trust, Count VII must be dismissed with prejudice.

    **IV.**    **Plaintiffs have not stated a claim for breach of fiduciary duty (Count VI) because the BELOCs do not establish a fiduciary duty.**

According to the BELOCs, McMann does not have a duty to hold the ICA Payments in trust. [Recital D of the BELOCs.] This argument does not rely on made up facts or inferences in favor of the movant; rather it comes straight out of the BELOCs that control and govern the relationship between the Plaintiffs and McMann. All that the BELOCs require is that McMann relating to the ICA Payments is to create a credit in favor of Plaintiffs on its books and records. *Id*. Plaintiffs have responded to this argument by citing its own allegations in the Complaint that

paraphrase the duties in the BELOCs and a letter from McMann's counsel rather than the BELOCs themselves. This is deliberate, as Plaintiffs have taken the same strategy in its other motions filed in this case.[13] And make no mistake: it is a concession that the actual language in the BELOCs does not aid them. And, as the BELOCs do not in any way establish a fiduciary duty, Plaintiffs are right to make this concession, but as a result take unsustainable positions in their Response.

Additionally, since Plaintiffs do not plead that McMann ever received the ICA Payment, they cannot argue that McMann breached their fiduciary duties to hold the funds in trust without alleging that Genie acted as an agent for McMann. For Plaintiffs to impose liability for actions taken by third parties, it would require them to invoke the doctrine of *respondeat superior*. *Daniels v. Corrigan*, 382 Ill. App. 3d 66, 75 (1st Dist. 2008). As previously discussed, Plaintiffs do not allege anywhere in the Complaint that Genie acted as McMann's agent.

Plaintiffs cite one case in their rebuttal, and it is wholly inapplicable to the facts of this case. In *Ploog v. Homeside Lending, Inc.*, residential mortgagors stated a claim for mismanagement of their escrow account. *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 875 (N.D. Ill. 2002). The basis for this is that there is an implied professional competence as it applies to the mortgages, their escrow accounts, and their related tax implications. *Ploog*, 209 F. Supp. 2d at 875; *see also Choi v. Chase Manhattan Mortg. Co.*, 63 F. Supp. 2d 874, 885 (N.D. Ill. 1999). "This implied duty is similar to the duties of attorneys and accountants to use their own knowledge and expertise and therefore makes the duty arise outside of the contract." *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 875 (N.D. Ill. 2002).

The relationship between a residential mortgagor and their lender is not akin to Plaintiffs, commercial hoteliers seeking an eight-figure loan to build a 105-room hotel. See BELOCs at

---

[13] See Plaintiffs' Memorandum of Law in Support of Their Motion for Temporary Restraining Order and Injunctive Relief and Hearing on Preliminary Injunction. [Dkt. No. 11 at 283].

Recital B. Moreover, defendants in that *Ploog* maintained possession and control of the plaintiff's home. *Id.* at 866.

Additionally, Plaintiffs claim for breach of fiduciary duty suffers from the same failure as their claims for fraud and conversion: it is entirely duplicative of its count for breach of contract. Once again, Plaintiffs plead the same operative facts (tendering a payment of 3.6 million pursuant to the BELOCs) and plead the same damages (3.6 million). This serves as an additional basis for dismissing their claim of breach of fiduciary duty with prejudice. *Freedom Mortg. Corp.* 720 F. Supp. 2d at 992

V. **Plaintiffs' claims for breach of fiduciary duty (Count VI) must be dismissed pursuant to the limitations clause in the contract.**

Plaintiffs make the argument that a limitation of liability clause is inappropriate at the motion to dismiss stage, despite that a limitation of liability is addressed in the BELOCs. Plaintiffs do not cite anything to support this proposition and therefore waive this argument. *Devs. Sur. & Indem. Co. v. Krause*, No. 14 C 6275, 2015 WL 3962287, at 2 (N.D. Ill. June 29, 2015).

According to the Illinois Supreme Court, "in the nonregulated areas the decisions of this court and those of other jurisdictions reflect a widespread policy of permitting competent parties to contractually allocate business risks as they see fit. [Citations Omitted] This accords to the individual the dignity of being considered capable of making and standing by his own agreements." *McClure Eng'g Assocs., Inc. v. Reuben H. Donnelley Corp.*, 95 Ill. 2d 68, 73, 447 N.E.2d 400, 403 (1983). Admittedly, these limitations do not apply to fraud or intentional torts. Therefore, to the extent that public policy limits claims of conversion, fraudulent transfer, or fraud, this would not apply. However, it would nonetheless limit claims of breach of fiduciary duty to the extent that such claims are predicated on McMann negligently causing damages *vis a vis* relying on Genie to

procure a line of credit and provide refunds. This provides an additional basis to dismiss Plaintiffs' breach of fiduciary duty claims with prejudice.

## CONCLUSION

Wherefore, for the foregoing reasons this Court should grant McMann Commercial Lending, LLC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss Plaintiffs' complaint with prejudice.

Respectfully Submitted,

McMann Commercial Lending, LLC

By: /s/ Daniel S. Klapman
One of its Attorneys
Daniel S. Klapman
Robert S. Strauss
Ted Chakos
SWK Attorneys LLC
500 Skokie Blvd. Suite 600
Northbrook, Illinois 60062
224-260-3090 – Tel
dklapman@swkattorneys.com – E-mail

CERTIFICATE OF SERVICE

I, Daniel Klapman, an attorney herein, hereby certifies that I caused a copy of the foregoing **MCMANN COMMERCIAL LENDING LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO 12(b)(6)** to be served upon all counsel of record by causing a copy of same to be served via the CM/ECF System on March 4, 2024.

/s/ Daniel S. Klapman